ACCEPTED
13-15-00041-CR
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
4/17/2015 9:01:12 AM
DORIAN RAMIREZ
CLERK

## NO.  13-15-00041-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF
TEXAS
AT CORPUS CHRISTI

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
4/17/2015 9:01:12 AM
DORIAN E. RAMIREZ
Clerk

## THE STATE OF TEXAS,
### Appellant,

## v.

## UYLESS TROY BLAND,
### Appellee.

On Appeal from the
377th Judicial District Court
Of Victoria County, Texas
Cause No. 14-10-28227-D

## BRIEF FOR THE STATE OF TEXAS

### STEPHEN B. TYLER
Criminal District Attorney
Victoria County, Texas

### BRENDAN WYATT GUY
Assistant Criminal District Attorney
Victoria County, Texas
205 N. Bridge St. Ste. 301,
Victoria, Texas 77901-6576
bguy@vctx.org
(361) 575-0468
(361) 570-1041 (fax)
State Bar No. 24034895

Attorneys for the State of Texas

## ORAL ARGUMENT NOT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to TEX. R. APP. P. 38.1(a) (2003), the parties to the suit are as follows:

| | |
|---|---|
| **APPELLANT** | **The State of Texas** |
| **APPELLEE** | **Uyless Troy Bland** |
| **TRIAL JUDGE** | **The Honorable Eli Elmo Garza**<br>**377th Judicial District Court**<br>**Victoria, Texas** |
| **TRIAL PROSECUTOR** | **Brendan Wyatt Guy**<br>State Bar No. 24034895<br>Assistant Criminal District Attorney<br>205 N. Bridge St. Ste 301<br>Victoria, Texas 77901-6576 |
| **TRIAL DEFENSE ATTORNEY** | **Terri Lynn Dornburg**<br>Law Offices of Brent Dornburg<br>State Bar No. 90001553<br>120 N. Main Street<br>Victoria, Texas 77901 |
| **APPELLATE STATE'S ATTORNEY** | **Brendan Wyatt Guy**<br>State Bar No. 24034895<br>Assistant Criminal District Attorney<br>205 N. Bridge St. Ste 301<br>Victoria, Texas 77901-6576 |
| **APPELLATE DEFENSE ATTORNEY** | **William Allen White**<br>State Bar No. 00788659<br>P.O. Box 7422<br>Victoria, Texas 77903 |

# TABLE OF CONTENTS

**PAGE (S)**

IDENTITY OF PARTIES AND COUNSEL.............................................. i

TABLE OF CONTENTS .................................................... ii-iii

INDEX OF AUTHORITIES...............................................iv-vii

STATEMENT OF THE CASE...............................................1-2

ISSUES PRESENTED.......................................................2-3

STATEMENT OF THE FACTS .....................................3-12

SUMMARY OF ARGUMENT.........................................12-16

ARGUMENT ......................................................................16-45

  I. The appropriate standard of review in this case is
    *de novo* ........................................................................ 16

  II.  A trial court is not entitled to implicit findings of
    fact when it submitted explicit findings of fact .....................17-21

  III. The trial court committed reversible error when it
    concluded that Section 544.010(c) of the Texas
    Transportation Code does not mandate stopping
    prior to entering an intersection when approaching
    a stop sign on a street that does not have a crosswalk
    or designated stop line ...............................................22-25

  IV.  In the alternative, the trial court committed reversible
    error by concluding that a mistake of law could not
    justify a traffic stop................................................25-30

**V.** **The trial court committed reversible error by concluding there was not reasonable suspicion for the traffic stop in this case**................................................................**30-37**

**VI.** **The free air sniff of and search of Appellee's vehicle were lawful**..........................................................................**38-45**

**PRAYER**................................................................................. **45**

**SIGNATURE**.......................................................................... **45**

**CERTIFICATE OF COMPLIANCE** ..................................... **46**

**CERTIFICATE OF SERVICE** ............................................. **47**

# INDEX OF AUTHORITIES

## United States Supreme Court Cases

*Heien v. North Carolina,* 135 S. Ct. 530 (2014) ......................... 14, 26-29

*Illinois v. Caballes,* 543 U.S. 405 (2005) ................................................. 38

*United States v. Sokolow,* 490 U.S. 1 (1989) ............................................ 31

## United States Court of Appeals Cases

*United States v. Alvarado-Zarza,*
13-50745, 2015 WL 1529102 (5th Cir. 2015) ........................................... 27

*United States v. Granado,* 302 F. 3d 421 (5th Cir. 2002) ....................... 26

*United States v. Lopez-Valdez,* 178 F.3d 282 (5th Cir. 1999) ................. 26

*United States v. Miller,* 146 F. 3d 274 (5th Cir. 1998) ........................... 26

## Texas Cases

*Amador v. State,* 221 S.W. 3d 666 (Tex. Crim. App. 2007) ................... 16

*Aviles v. State,* 23 S.W. 3d 74
(Tex. App.-Houston [14th Dist] 2000, pet. ref'd) .................................. 31

*Branch v. State,* 335 S.W. 3d 893
(Tex. App.-Austin 2011, pet. ref'd) .................................................. 38, 44

*Byron v. State,* 07-05-0131, 2006 WL 1490677
(Tex. App.-Amarillo 2006, pet. ref'd)
(mem. op)(not designated for publication) ............................................ 43

*Cullen v. State,* 195 S.W. 3d 696 (Tex. Crim. App. 2006) ......... 13, 17-20
............................................................................................. 35, 38

*Derichsweiler v. State,* 348 S.W. 3d 906 (Tex. Crim. App. 2011) .. 31, 42

*Duff v. State,* 546 S.W. 2d 283 (Tex. Crim. App. 1977) ....................... 40

*Estrada v. State,* 30 S.W. 3d 599
(Tex. App.-Austin 2000, pet. ref'd) ........................................................ 43

*Evans v. State,* 14-13-00642-CR, 2015 WL 545702
(Tex. App.-Houston [14th Dist]. 2015)(mem. op) ................................. 27

*Ford v. State,* 158 S.W. 3d 488 (Tex. Crim. App. 2005) ............ 30-31, 33

*Goudeau v. State,* 209 S.W. 3d 713
(Tex. App.-Houson [14th Dist.] 2006, no pet) .................................. 25-26

*Haas v. State,* 172 S.W. 3d 42
(Tex. App.-Waco 2005, pet. ref'd) ......................................................... 44

*Hamal v. State,* 390 S.W. 3d 302 (Tex. Crim. App. 2012) ........ 16, 31, 43

*Harrison v. State,* 7 S.W. 3d 309
(Tex. App.-Houston [1st Dist] 1999, pet. ref'd) .................................... 44

*Lambeth v. State,* 221 S.W. 3d 831
(Tex. App.-Ft. Worth 2007, pet. ref'd) ................................................. 41

*Kothe v. State,* 152 S.W. 3d 54 (Tex. Crim. App. 2004) ....................... 39

*Parker v. State,* 297 S.W. 3d 803
(Tex. App.-Eastland 2009, pet. ref'd) ................................................... 40

*Powell v. State,* 5 S.W. 3d 369
(Tex. App.-Texarkana 1999, pet. ref'd) ................................................. 43

*Powell v. State,* 898 S.W. 2d 821 (Tex. Crim. App. 1994) ................... 44

*State v. Krall,* 13-12-00469-CR
(Tex. App.-Corpus Christi 2013, pet. ref'd)
(mem. op.)(not designated for publication) ...............................13, 19-21

*State v. Police,* 377 S.W. 3d 33
(Tex. App.-Waco 2012, no pet) ........................................ 24, 29

*State v. Ross,* 32 S.W. 3d 853 (Tex. Crim. App. 2000) ......................... 17

*State v. Tercero,* 01-14-00120-CR, 2015 WL 1544519
(Tex. App.-Houston [1st Dist.] 2015)
(opinion subject to withdrawal)............................................ 28

*State v. Weaver,* 349 S.W. 3d 521 (Tex. Crim. App. 2011).................... 16

*York v. State,* 342 S.W. 3d 528 (Tex. Crim. App. 2011) ........................ 31

**United States Constitution**

U.S. CONST. amend. IV.................................................. 26, 38

**Texas Statutes**

TEX. CODE CRIM. PROC. art 38.23 (West 2005) ........................28-29

TEX. GOV'T CODE §311.021 (West 2013)......................................... 23

TEX. PENAL CODE ANN §12.42 (West 2014)..................................... 2

TEX. TRANSP. CODE §544.010 (West 2011) ........................ii, 2, 12-13
....................................................................22-25, 29-30

## Texas Rules

**TEX. R. APP. 9.4**...................................................................... **46**

**TEX. R. APP. 38.1**........................................................................ **i**

IN THE COURT OF APPEALS
FOR THE THIRTEEN DISTRICT OF TEXAS
AT CORPUS CHRISTI

THE STATE OF TEXAS,…..…………………………………..Appelant

v.

UYLESS TROY BLAND,…..…………………………………...Appellee

* * * * *

**STATE'S BRIEF ON THE MERITS**

* * * * *

TO THE HONORABLE COURT OF APPEALS:

COMES NOW, THE STATE OF TEXAS**,** by and through her Criminal

District Attorney, Stephen B. Tyler, and as Appellant in the above numbered

and entitled cause, and files this the Appellant's brief showing:

## STATEMENT OF THE CASE

Appellee was charged by indictment with one count of Possession of

Substance in Penalty Group 1 in an amount of less than one gram and one

count of Possession of a Substance in Penalty Group 3 in an amount of less

than 28 grams. [CR-I-5-6]. Both offenses were alleged to have been

committed within a drug free zone. [CR-I-5]. The Possession of Substance

in Penalty Group 1 allegation (Count 1) was further enhanced pursuant to

Section 12.42(a) of the Texas Penal Code due to Appellee having a prior felony conviction. [CR-I-6]. On January 16, 2015, Appellee filed a motion to suppress. [CR-I-13-15]. A hearing was held on that motion on January 23, 2015. [RR-I-1]. That same day, the Honorable Eli Garza presiding, granted Appellee's motion to suppress with a written order. [CR-I-18-19]. The State timely filed its notice of appeal on January 26, 2015. [CR-I-20-23]. On that same day the State also requested written findings of fact and conclusions of law. [CR-I-25-26]. On January 28, 2015, the trial court issued its written findings of fact and conclusions of law. [CR-I-36-38].

## ISSUES PRESENTED

1) Is the legal standard for review in this case *de novo*?

2) Is a trial court entitled to implicit findings of fact on matters it did not address in its written findings of fact?

3) Did the trial court err by concluding that Section 544.010(c) of the Texas Transportation Code does not require vehicles to stop prior to entering an intersection when that intersection has a stop sign and there is no crosswalk or designated stop line on the street?

4) Did the trial court err by concluding that a mistake of law could not justify a traffic stop?

5) Did the trial court commit reversible error by finding that the police did not have reasonable suspicion to conduct a traffic stop on the Appellee?

6) Was the free air sniff conducted on Appellee's vehicle lawful?

7) Was the search of Appellee's vehicle lawful?

**STATEMENT OF THE FACTS**

Appellee was indicted on October 2, 2014 with one count of Possession of a Substance in Penalty Group 1 in an amount of less than one gram, and one count of Possession of a Substance in Penalty Group 3 in an amount of less than 28 grams. [CR-I-5]. Both offenses were enhanced due to taking place within a drug free zone. *Id.* On January 16, 2015, Appellee filed a motion to suppress. [CR-I-13-15]. The trial court conducted a hearing on this motion to suppress on January 23, 2015. [RR-I-1].

The State first called Detective Dennis Paine of the Victoria Police Department. [RR-I-7]. Detective Paine initially established that he was a certified peace officer who had been a peace officer for 6.5 years. [RR-I-8]. He also established that he had received specialized training on traffic enforcement and had served as a patrol officer for 4.5 years. *Id.*

Detective Paine then testified that on July 28, 2014, he was conducting undercover surveillance of the 2500 block of Rendon Street in Victoria, Texas. [RR-I-8-9]. Detective Paine then explained the police were monitoring that area because the Victoria Police Department had received numerous Crime Stopper tips about criminal activity in that location and had stopped numerous people leaving that location who were then discovered to

have crack cocaine on them. [RR-I-9]. Detective Paine also established that the location they were monitoring was on a dead end street, that there were about five houses on that street, and that the police were monitoring it from within a couple of hundred yards. [RR-I-10-11].

Detective Paine then described how, on July 28, 2014, he observed a vehicle leaving the monitored area and described how his unmarked vehicle followed that vehicle. [RR-I-11]. He further stated they had only been monitoring the area for from five to ten minutes when they saw this vehicle leave the area and followed it. [RR-I-11]. Detective Paine also confirmed that he did not actually see this vehicle at the suspect location. *Id.*

Detective Paine then described following the vehicle for approximately two miles before he observed a traffic violation. [RR-I-12]. Detective Paine then stated that the traffic offense occurred when the vehicle turned from Stayton Street onto Brownson Street. *Id.* He also described the vehicle driving around in circles prior to the traffic stop occurring and theorized that the vehicle's odd movement could be due to it trying to throw off police surveillance. [RR-I-13].

Detective Paine then stated that his vehicle was approximately two car lengths behind the suspect vehicle. *Id.* He also described how there were two other officers in the vehicle with him, with him being in the front

passenger seat, Sergeant Fetters driving, and Detective McDonald in the backseat. [RR-I-13-14].

Detective Paine then described seeing the vehicle they were following approach a stop sign and stop with the front of the vehicle protruding into the intersection. [RR-I-14]. Detective Paine then explained that the suspect vehicle was far enough into the intersection that its front tires were in the intersection. *Id.*

Detective Paine then confirmed that the intersection where this traffic offense occurred did not have a designated stop line on the street. [RR-I-16]. Detective Paine then testified that he did not initiate the actual traffic stop on the Appellee but rather relayed the information about the traffic violation to Detective Kelly Gibbs, who initiated the actual traffic stop. [RR-I-16-17]. Detective Paine also established that Detective Gibbs knew from the information he provided which vehicle to stop, where that vehicle had come from, and why the police were monitoring that area. [RR-I-17-18].

On cross-examination Detective Paine indicated he did not know if Detective McDonald and Sergeant Fetters also observed the traffic violation. [RR-I-21].

On re-direct, Detective Paine testified that he had not observed Appellee's vehicle enter Rendon Street but rather only saw it depart from that area. [RR-I-31]. Detective Paine also confirmed that in the time he was following the Appellee's vehicle, it never stopped at a McDonalds or anywhere else. *Id.*

Detective Paine then testified that as to the location of the traffic offense (the Stayton-Brownson intersection), he did not observe any obstructions on Brownson Street. [RR-I-31-32].

The State then called Detective Kelly Gibbs. [RR-I-34]. Detective Gibbs established she was a certified peace officer with over eight years experience, and that she was a police canine handler. [RR-I-34-35]. Detective Gibbs then testified that she was on duty the night of July 28, 2014 in a marked police vehicle, and that she was at that time aware of the police surveillance of the 2500 Rendon Street area and was familiar with the history of criminal activity in that area. [RR-I-36].

Detective Gibbs then testified to being called over to assist with a vehicle that the undercover surveillance team was following, to observing the undercover vehicle, and to being informed about a traffic violation that had been committed by the vehicle the undercover team was following.

[RR-I-36-37]. Detective Gibbs also described being informed of which vehicle had committed the traffic offense. [RR-I-37].

Detective Gibbs then described conducting a traffic stop on the suspect vehicle. [RR-I-38]. She also confirmed she had been informed that the vehicle had stopped in the intersection. *Id.* Detective Gibbs then testified that the stopped vehicle contained both a driver and a passenger. [RR-I-39]. She then identified the Appellee as the driver of the vehicle. *Id*.

Detective Gibbs then described observing nervous behavior from both the driver and passenger. [RR-I-40]. Detective Gibbs also testified to recognizing the Appellee from a narcotics investigation with which she had been involved with in the last three years. [RR-I-41].

Detective Gibbs then described how she questioned the Appellee and how he was evasive with her and would not answer her questions about from where he had come. [RR-I-42]. She also indicated that the Appellee indicated he had prior drug charges from around 1996. *Id.* Detective Gibbs then indicated she requested permission to search the vehicle, which Appellee denied. [RR-I-43].

Detective Gibbs then described questioning the passenger, who also indicated prior arrests for drug charges. *Id.* Detective Gibbs also indicated that the passenger stated that the two of them had come from McDonalds.

[RR-I-43-44]. This was different testimony from the Appellee who never mentioned anything about stopping at a McDonalds. [RR-I-44]. The entirety of Detective Gibbs's conversations with both the Appellee and his passenger was recorded and admitted into evidence as State's Exhibit 1. [State's Exhibit 1; RR-I-15].

Detective Gibbs then indicated that approximately seven minutes into the traffic stop she made the decision to run her canine over the Appellee's vehicle. [RR-I-44]. Detective Gibbs confirmed the canine free air sniff was conducted before the traffic stop was complete as she had not yet run the Appellee and his passenger's names and still needed to check on the paper plates on their vehicle. [RR-I-45].

Detective Gibbs then established that both herself and her canine partner, Robby, were certified to conduct free air sniffs for narcotics and described her history with using Robby. [RR-I-46-48]. She also confirmed that Robby was with her on the scene that night, so there was no delay to bring him to the location of Appellee's vehicle. [RR-I-46]. Detective Gibbs then described how she conducts a free air sniff and established that Robby alerted for the odor of narcotics when conducting the free air sniff on Appellee's vehicle. [RR-I-48-49].

Detective Gibbs then described searching the vehicle after Robby alerted on it and locating drug paraphernalia, cocaine, and Ambien pills within the vehicle. [RR-I-49-50]. Detective Gibbs then sponsored the admission of her and Robby's certification documents into evidence. [RR-I-51-52; State's Exhibit 3].

After the completion of Detective Gibbs' testimony, the State rested. [RR-I-52]. The Appellee then called Detective Jimmy McDonald to testify. [RR-I-55].

Detective McDonald established that he had been a peace officer for over seven years and had approximately three years experience as a patrol officer. [RR-I-55]. Detective McDonald then described how he encountered the Appellee on July 28, 2014 as part of his role in a surveillance operation off of Rendon Street. [RR-I-56]. Detective McDonald was unsure how long he was involved in surveying the Rendon area but said it could have been just a few minutes or as much as a hour. [RR-I-57].

Detective McDonald then describe following Appellee's vehicle as it drove in a circular pattern. [RR-I-58]. Detective McDonald also confirmed that Appellee's traffic violation occurred at the Brownson and Stayton intersection. [RR-I-60].

Detective McDonald then testified that he observed Appellee's vehicle stopped on the inside point, which is past the curb and the stop sign. [RR-I-66]. Detective McDonald was unable to state how much of the vehicle was past the stop sign. [RR-I-68]. He also did not recall if there was anything along the curb of Brownson Street at the time that the officer's observed the traffic violation. *Id.*

The Appellee then called Sergeant Clay Fetters of the Victoria Police Department. [RR-I-69]. Sergeant Fetters established he had been with the Victoria Police Department for five years and had specialized training in regards to traffic code enforcement. [RR-I-69-70]. Sergeant Fetters then advised he came into contact with the Appellee on July 28 after conducting surveillance of a known narcotics location at 2500 block of Rendon Street. [RR-I-70].

Sergeant Fetters then described following Appellee's vehicle through several streets and established that the Appellee was driving in a circular pattern through the neighborhood. [RR-I-72-73]. Sergeant Fetters also stated they were about three car lengths behind Appellee's vehicle. [RR-I-74]. Sergeant Fetters also explained how he was driving the vehicle, and that it was the primary responsibility of the passengers to make observations, so he could focus on driving safely. *Id.*

When asked by Appellee's counsel if he observed the Appellee commit a traffic violation, Sergeant Fetters answered that it appeared to him that the Appellee went into the intersection, past the stop sign. [RR-I-75].

On cross-examination Sergeant Fetters testified that while they were following the Appellee he never stopped at a McDonalds. [RR-I-77].

The trial court granted the Appellee's motion to suppress. [RR-I-91]. Nothing in the trial court's pronouncement from the bench indicated the trial court found any of the testifying officers to not be credible or reliable. [RR-I-90-91]. Rather the trial court analysis seemed to be based on a conclusion that a mistake of law would not justify an erroneous traffic stop. [RR-I-91].

On January 26, 2015, the State requested written findings of fact and conclusions of law. [CR-I-25-26]. On January 28, 2015, the trial court issued its findings of fact and conclusions of law. [CR-I-36-38]. The trial court did not issue any findings of fact that any of the officers had testified untruthfully or that the officers were not credible. *Id.* The trial court did conclude that neither Sergeant Fetters nor Detective McDonald observed the alleged traffic violation. [CR-I-37]. The trial court did not make a similar finding that Detective Paine did not observe the alleged traffic violation. [CR-I-36-38].

The trial court held that the officers did, "not understand or are mistaken as to a driver's responsibility under *Transportation Code* §544.010 (2014)." [CR-I-37]. The trial court also concluded that "an officer's mistaken understanding of the law will not justify a stop." *Id.* The trial court's findings concluded that Appellee's vehicle did not enter the intersection and concluded that the police did not have reasonable suspicion to initiate a traffic stop. [CR-I-38]. The trial court's findings did not state that it was unreasonable for Detective Paine to conclude that Appellee had stopped with his vehicle in the intersection. [CR-I-36-38]. The trial court's findings did not address the legality of the free air sniff conducted on Appellee's vehicle or the legality of the subsequent search of Appellee's vehicle other than to note that a canine free air sniff was conducted on Appellee's vehicle and the canine that performed the free air sniff detected the presence of contraband in the Appellee's vehicle. [CR-I-36-38].

## **SUMMARY OF THE ARGUMENT**

This appeal turns on questions of law and mixed questions of law and fact that relate to whether an investigating officer had reasonable suspicion. As such the correct standard of review for this appeal is *de novo*.

A trial court is not entitled to have implicit findings of fact made on its behalf on matters that were not addressed in the trial court's explicit

findings of fact. Allowing a trial court to be given the benefit of implicit findings when it made explicit findings undercuts the entire purpose of the *Cullen* rule in requiring trial courts on request to prepare findings of fact. To the extent that the *Krall* case held otherwise and established a precedent that trial courts would still be given the benefit of implicit findings even when the trial court prepared explicit findings, *Krall* should be overruled. In the alternative, this case is distinguishable from *Krall* as here unlike in *Krall,* the State actually requested findings of fact which places a greater obligation on the trial court to prepare findings of fact that fully address the basis of the trial court's ruling.

Section 554.010(c) of the Texas Transportation Code requires when approaching an intersection with a stop sign on a road that does not have a crosswalk or designated stop line, that the motorist stop their vehicle prior to entering the intersection. That is the most logical interpretation of the statute, and it is the interpretation that is consistent with that of the other Texas appellate court which has examined this statute. As such, the trial court committed reversible error when it concluded that under such circumstances the statute did not necessarily require motorists to stop before entering the intersection.

In the alternative even if Detective Paine did misinterpret the statute, his observations of Appellee stopping his vehicle in the intersection still established reasonable suspicion to stop the Appellee because reasonable suspicion can be based on a mistake of law, so long as that mistake of law is reasonable. The Supreme Court established that principle in the recent *Heien* case, and that same principle should be applied in Texas courts. As such, the trial court committed reversible error by concluding that a mistake of law could not provide reasonable suspicion to justify a traffic stop.

The investigating officers had reasonable suspicion to initiate a traffic stop on Appellee's vehicle. Detective Paine observed conduct that he believed constituted a traffic stop. It does not matter if Appellee actually did in fact commit a traffic offense as reasonable suspicion does not require that the suspect actually be guilty of an offense. The trial court did not issue any findings stating that it found Detective Paine's testimony to be lacking in credibility or in reliability which, because the trial court was obligated to issue findings of fact stating its essential findings, the trial court would have been obligated to do if it felt that Detective Paine's testimony was not credible or reliable. As such, since the trial court did not make any findings concluding that Detective Paine lacked credibility or reliability, his

observations of a possible traffic offense were sufficient to establish reasonable suspicion.

The free air sniff and search of Appellee's vehicle were both legal. The trial court did not issue any findings addressing the legality of either the free air sniff or the search of Appellee's vehicle and thus since the trial court was obligated to issue findings concerning the essential findings behind its ruling, the trial court clearly accepted the testimony concerning these operations and agreed that they were legal.

Furthermore, the free air sniff was legal both because Detective Gibbs did not unduly prolong the traffic stop by conducting the free air sniff, and also because from the totality of information the investigating officers had obtained prior to conducting the free air sniff, they had reasonable suspicion that Appellee's vehicle contained narcotics which would justify them extending the traffic stop to conduct a free air sniff.

The free air sniff performed on Appellee's vehicle was conducted by a trained and certified narcotics detection dog. The dog alerted for the odor of narcotics on the vehicle and that gave the investigating officers probable cause that there were narcotics within the vehicle. When officers have probable cause that a vehicle contains narcotics, they may search the vehicle

without a warrant. As such the search of the vehicle was lawful, and the evidence obtained as a result of that search should not have been suppressed.

## **ARGUMENT**

### **I. The appropriate standard of review in this case is *de novo*.**

A trial court's ruling on a motion to suppress is reviewed under a bifurcated standard of review. *Amador v. State,* 221 S.W. 3d 666, 673 (Tex. Crim. App. 2007). The trial court's determination of facts is entitled to almost total deference, so long as it is supported by the record. *State v. Weaver,* 349 S.W. 3d 521, 525 (Tex. Crim. App. 2011). However, the application law to fact questions that do not turn on the credibility and demeanor of witnesses is reviewed *de novo. Amador,* 221 S.W. 3d at 673. Moreover, whether the facts known to an officer amounted to reasonable suspicion is a mixed question of law and fact and is thus subject to *de novo* review. See *Hamal v. State,* 390 S.W. 3d 302, 306 (Tex. Crim. App. 2012). All the matters at issue in this appeal are legal questions or mixed questions of fact and law concerning whether the investigating officer's had reasonable suspicion. Therefore this case is subject to *de novo* review.

## II. A trial court is not entitled to implicit findings of fact when it submitted explicit findings of fact.

When a trial court <u>fails to file</u> findings of fact it is entitled to have the evidence considered in the light most favorable to its ruling and is further entitled to whatever implicit findings of fact support its ruling as long as those findings are supported by the record. See *State v. Ross,* 32 S.W. 3d 853, 855 (Tex. Crim. App. 2000)(emphasis added.) However, there is no logical reason to extend the same deference to the trial court's rulings when the trial court has filed findings of fact. When the trial court has actually submitted findings of fact the responsibility should fall on the trial court to submit complete findings of fact that fully address the rationale behind the court's rulings. As such the trial court should not be deemed to have made implicit findings of fact on matters that the court did not address in its explicit written findings.

It is well established that the losing party to a suppression hearing has an absolute right upon timely request to receive written findings of fact and conclusions of law from the trial court that express the "essential findings" of the trial court. See *Cullen v. State,* 195 S.W. 3d 696, 699 (Tex. Crim. App. 2006). The "essential findings" are the findings of fact and conclusions of law "adequate to provide an appellate court with a basis upon

which to review the trial court's application of the law to the facts." *Cullen,* 195 S.W. 3d at 699. The purpose of requiring these findings is to inform the appellate courts of the findings of fact for which the trial court's rulings are based. *Id.* Not having such findings effectively forces appellate courts to guess about a trial court's ruling on a motion to suppress. *Id.* at 698. That is unfair to both the parties and the appellate courts and will ultimately serve to reduce professionalism and accountability within the criminal justice system itself. Thus the requirement set down by the Court of Criminal Appeals in *Cullen* that trial courts, upon request of the losing party at a suppression hearing, submit their essential findings, is a sensible requirement that helps to promote the efficient administration of justice.

The potential benefits of the *Cullen* rule are greatly undercut if implicit findings are still written into the explicit findings of trial court's on matters the trial court did not address in their explicit written findings. Such a practice effectively eviscerates *Cullen* as it removes all obligation from the trial court to draft thorough findings of fact that fully explain all of the essential findings of the trial court. Indeed if the trial court is still to be given the benefit of implicit findings over matters it did not address in its explicit findings then the smarter practice for trial judges is obviously to say as little as possible in their explicit findings, so as to maximize the

advantage they receive from having comprehensive implicit findings imparted to their findings on any matter they did not directly address in their explicit findings. The natural consequence of such behavior is that it once again leaves appellate courts having to guess at the reasoning behind the trial court's rulings; the very wrong that *Cullen* aimed to eliminate.

Accordingly, in cases where trial courts submit explicit findings of fact they should not be given credit for implicit findings on any matter they did not specifically address in their explicit findings. Now such a rule would mean overturning the precedent established by this Honorable Court in the *Krall* case where implicit findings were read into the explicit findings submitted by the trial court in that case. See *State v. Krall,* 13-12-00469-CR at 4, 8 (Tex. App.-Corpus Christi 2013, pet. ref'd)(mem. op.)(not designated for publication.) However, since required trial judges to be bound by their explicit written findings of fact helps to better insure the effecient administration of justice and is the approach that is most consistent with the policy goals set down by the Court of Criminal Appeals in *Cullen,* the State respectfully requests this Honorable Court overrule *Krall* on this point and refuse to impart implicit findings of fact into the explicit findings of fact submitted by trial courts.

In the alternative even if this Honorable Court is unwilling to disturb the precedent established in *Krall,* the current case is readily distinguishable from *Krall.* In the present case the State, as the losing party at the suppression hearing, actively requested findings of fact and conclusions of law from the trial court. [CR-I-25-26]. That is different from the situation in *Krall* where the trial court issued its findings of fact and conclusions of law not in response to a request from the losing party at the suppression hearing, but rather on its own initiative as part of the order it issued granting the motion to suppress. See *Krall,* 13-12-00469-CR at 2.

Per *Cullen,* it is the losing party requesting findings of fact that triggers the trial court's obligation to submit its essential findings. See *Cullen,* 195 S.W. 3d at 699. Such a requirement is quite reasonable. It puts the burden on the losing party to seek elucidation for the trial court's ruling which is only proper. And it is likewise only logical that when a party takes active steps to request findings of fact, that party is much more entitled to receive comprehensive findings than a party who did not actively request findings. Likewise it is only logical that a trial court has a far greater obligation to prepare thorough findings when such findings have been requested by a party than when the trial court is simply submitting findings on its own initiative. A party that did not bother to request findings of fact

and conclusions of law has assumed the risk of an incomplete appellate record and therefore has no one to blame but itself when implicit findings are read into the record, but a party that has actively sought findings has made a genuine effort to establish an accurate understanding of the reasoning for the trial court's ruling, and therefore it should be entitled to have a complete explanation of the reasoning behind the trial court's rulings included within the record.

With such an understanding in mind, it is clear that this case is readily distinguishable from *Krall* because here, unlike in *Krall,* the State actively sought out findings of fact and conclusions of law. As such since the State made the effort to obtain an accurate record from the trial court, the trial court had a much greater obligation here than in *Krall* to prepare findings of fact and conclusions of law that fully covered its essential findings in the case. As such even if it was appropriate in *Krall* to read implicit findings into the trial court's explicit findings, here the trial court should be held to a higher standard, and thus the trial court should be bound by what it released as its essential findings in this case and should not have implicit findings added to those explicit findings.

**III.** **The trial court committed reversible error when it concluded that Section 544.010(c) of the Texas Transportation Code does not mandate stopping prior to entering an intersection when approaching a stop sign on a street that does not have a crosswalk or designated stop line.**

The first question at issue in this case concerning the legality of the traffic stop itself is whether Section 554.010(c) of the Texas Transportation Code requires vehicles, when approaching an intersection with a stop sign on a street that does not have a crosswalk or designated stop line on it, to stop prior to entering the intersection or whether under certain circumstances the statute allows motorists to stop with some portion (or even all) of their vehicle actually in the intersection. The investigating officer, Detective Paine, believed that under such circumstances the statute required motorists to stop their vehicle before entering the intersection. [RR-I-22]. The trial court disagreed with that interpretation and concluded that, "the officer's do not understand or are mistaken as to a driver's responsibility under *Transportation Code* §544.010 (2014)." [CR-I-37]. The trial court's interpretation of the statute is in error.

Now admittedly Section 544.010(c) of the Texas Transportation Code does not expressly state that in the absence of a crosswalk or clearly marked stop line, a vehicle operator must, when approaching a stop sign, stop before entering the intersection. However, that requirement is certainly implied by

the statute because it is the only logical interpretation of that statute. The obvious purpose of Section 554.010(c) of the Texas Transportation Code is to prevent traffic accidents. Therefore it is clearly necessary to have people stop before entering dangerous intersections. (The law would not ameliorate the risk of traffic accidents at dangerous intersections if it permitted people to take any portion of their vehicles into the intersection before stopping to make sure that it was safe to do so because as soon as any portion of their vehicle enters the intersection they would be at risk of being hit by oncoming vehicles.)

Texas law presumes in interpreting statutes that the legislature intended a "just and reasonable result." See TEX. GOV'T CODE §311.021(3). For Section 554.010(c) to achieve a just and reasonable result, it requires that in the absence of a crosswalk or designated stop line, people stop their vehicles before entering the intersection. That is the only interpretation that makes the statute workable and therefore that is the only interpretation that can achieve a just and reasonable result.

It is also notable that the only appellate court to give an in-depth look at this statute came to the same conclusion: that in the absence of a crosswalk or designated stop line, the statute requires stopping before entering the intersection. The Waco Court of Appeals evaluated Section

554.010(c) during their consideration of the *Police* case and concluded that "the plain language of the statute does not refer to a stop sign as an indicator of anything other than a signal that a stop is required <u>prior to entering the intersection</u>." *State v. Police,* 377 S.W. 3d 33, 38 (Tex. App.-Waco 2012, no pet)(emphasis added.) That is the most logical interpretation of the statute and therefore should be adopted within this jurisdiction as well.

Accordingly, it is clear that Detective Paine did not misinterpret Section 554.010(c). His interpretation that the statute requires that when a driver approaches a stop sign on a street that does not have a crosswalk or designated stop line, that driver must stop his vehicle before entering the intersection, is the correct interpretation of the statute, and therefore it is the interpretation that should have been applied in this case. To the extent the trial court held otherwise, the trial court committed plain error.

This error caused great harm to the State's case. The State's sole justification for the traffic stop was the violation of this statute. Therefore it was essential for the trial court to correctly interpret the application of the statute to get a proper ruling in this case. Obviously the trial court's conclusion that there was not reasonable suspicion to support that a traffic offense occurred in this case is untenable if the trial court misapplied the statute at issue. Additionally, an improper interpretation of the statute would

likely unfairly impact how the trial court interpreted the weight and credibility of the testimony of the investigating officers. (Obviously a fact finder is going to give less weight to the testimony of a police officer when the fact finder erroneously believes that police officer does not understand the law he is charged with enforcing.) Therefore the trial court's error on this matter would have colored every aspect of its deliberations in this case. Accordingly, since this error caused great harm to the State's case, the trial court's decision should be reversed.

## IV. In the alternative, the trial court committed reversible error by concluding that a mistake of law could not justify a traffic stop.

In the alternative, even if this Honorable Court concludes that the trial court correctly interpreted Section 554.010(c) of the Texas Transportation Code, the trial court still committed reversible error by concluding that "an officer's mistaken understanding of the law will not justify a stop." [CR-I-37].

The trial court relied upon the *Goudeau* case for its determination that a mistaken belief in the law could not justify a traffic stop. See [CR-I-37]; *Goudeau v. State,* 209 S.W. 3d 713, 716 (Tex. App.-Houson [14th Dist.] 2006, no pet). *Goudeau* itself primarily relied upon a series of 5th Circuit cases for its determination that a traffic stop could not be based upon an

officer's mistaken understanding of the traffic law. See *Goudeau,* 209 S.W. 3d at 716; *United States v. Granado,* 302 F. 3d 421, 423 (5th Cir. 2002); *United States v. Lopez-Valdez,* 178 F.3d 282, 289 (5th Cir. 1999); *United States v. Miller,* 146 F. 3d 274, 279 (5th Cir. 1998). That legal principal was certainly valid at the time *Goudeau* was decided, but it has now been superseded by the United States Supreme Court's recent *Heien* decision which established that a traffic stop could be based on a mistake of law, so long as the mistake of law was reasonable. See *Heien v. North Carolina,* 135 S. Ct. 530 (2014).

In *Heien,* the Supreme Court specifically noted that "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Id.* at 536. The Supreme Court then explained that "to be reasonable is not to be perfect" and confirmed that "the Fourth Amendment allows for some mistakes on the part of government officials." *Id.* The Supreme Court then further advised that "the limit is that the mistakes must be those of reasonable men." *Id.* The Supreme Court then established that "reasonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion. Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonable mistaken on either ground." *Heien,* 135

S. Ct. at 536. Thus *Heien* clearly overturns the rationale of *Goudeau* and its forebears on this particular legal issue, and as such the trial court erred when it concluded that a mistake of law would not justify a traffic stop. *Heien* makes clear that a traffic stop can be based on a mistake of law, so long as that mistake was reasonable.

Now it remains an open question of if *Heien* applies in Texas courts. The 5th Circuit in its recent *Alvarado-Zarza* case certainly seemed to believe that *Heien* applies to Texas cases as in that case the 5th Circuit, rejected a *Heien* based argument, not because it concluded that *Heien* did not apply in Texas courts but rather because it concluded that the investigating officer's mistake of law in that case was not reasonable. See *United States v. Alvarado-Zarza,* 13-50745, 2015 WL 1529102 at 2-3 (5th Cir. 2015). By addressing the *Heien* issue on the merits of the claim, the 5th Circuit implicitly recognized that *Heien* applies in Texas cases. Likewise at least one Texas appellate court has done likewise, rejecting a *Heien* based mistake of law argument on the merits of the claim rather than on a categorical determination that *Heien* does not apply in Texas courts. See *Evans v. State,* 14-13-00642-CR, 2015 WL 545702 at 4 n. 5 (Tex. App.-Houston [14[th] Dist]. 2015)(mem. op). (Though at least one Texas appellate court seems opposed to applying *Heien* in Texas cases or at least opposed to applying *Heien* when

the issue is a nonconsensual search of a person. See *State v. Tercero,* 01-14-00120-CR, 2015 WL 1544519 at 7 (Tex. App.-Houston [1st Dist.] 2015)(opinion subject to withdraw).)

At any rate, while the issue of whether *Heien* applies in Texas cases has not been definitively settled yet, the State contends that *Heien* should apply in Texas cases. The reasoning of *Heien* as to why reasonable mistakes of law do not void reasonable suspicion is logical and thus there is no good reason for Texas courts not to apply the same sensible standard in judging an officer's reasonable mistake of law. Furthermore, as already discussed the prior Texas law holding that a mistake of law could not justify a traffic stop was itself based primarily on federal cases. Since the federal foundational cases for that principle are no longer applicable, there is little reason for Texas courts to continue to apply that doctrine. Instead Texas courts should apply the standard set down by the Supreme Court which recognizes that reasonable suspicion can still be had from a mistake of law, so long as the mistake of law was reasonable. Nor does Article 38.23 of the Texas Code of Criminal Procedure bar the application of *Heien;* that statute only forbids the introduction of evidence obtained in violation of the law or the Constitution of the State of Texas or the United States. *Heien* though makes a convincing case that evidence obtained from a reasonable mistake of law is not obtained

in violation of the Constitution or of the law, and it is difficult to see how evidence obtained from a reasonable mistake of law could be considered to have been obtained in violation of the laws or Constitution of either Texas or the United States. As such evidence obtained from a reasonable mistake of the law should not be deemed as to trigger Article 38.23, and therefore there is no reason such evidence should be inadmissible in Texas courts.

If *Heien* is deemed to apply in Texas courts, then the question becomes whether Detective Paine's interpretation of the Section 554.010(c) of the Texas Transportation Code was reasonable, and clearly his interpretation of the statute was objectively reasonable. Detective Paine's interpretation of the statute is certainly a plausible reading of the statute. After all, his interpretation of the statute is consistent with the obvious purpose of the statute (to help avoid traffic accidents.) And, as already discussed, Detective Paine's conclusion that the statute requires stopping before entering the intersection is the same conclusion the Waco Court of Appeals reached in the *Police* case. An officer can hardly be said to have unreasonably interpreted a statute if his interpretation of the statute tracks with the interpretation of the only Texas appellate court that has seriously evaluated that statute.

As such even if it is concluded that Detective Paine's interpretation of Section 554.010(c) was incorrect, his mistake of law was clearly a reasonable mistake. Accordingly, that mistake of law can still form the basis for reasonable suspicion that he observed an offense, and it was plain error for the trial court to hold otherwise.

The trial court's error on this point clearly caused harm to the State, as the trial court's determination on if there was reasonable suspicion for the traffic stop would likely have been very different if the court had accepted that a reasonable mistake of law could still furnish reasonable suspicion to justify a traffic stop. As such since the trial court's error caused clear harm to the State's case, the trial court's ruling should be reversed.

## V. The trial court committed reversible error by concluding there was not reasonable suspicion for the traffic stop in this case.

Regardless of which interpretation of Section 554.010(c) is applied, it is clear that the investigating officers had reasonable suspicion to initiate a traffic stop of Appellee's vehicle. An officer conducts a lawful detention when he has reasonable suspicion to believe that an individual is violating the law. See *Ford v. State,* 158 S.W. 3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific, articulable facts that when combined with rational inferences from those facts would lead the

officer to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford,* 158 S.W. 3d at 492. Reasonable suspicion is an objective standard that disregards any subjective intent of the officer in making the stop and focuses instead on whether there was an objectively justifiable basis for the detention. See *Derichsweiler v. State,* 348 S.W. 3d 906, 914 (Tex. Crim. App. 2011). It is therefore necessary to look at the totality of the circumstances to see if reasonable suspicion has been met. *Id.* The test is whether the facts available to the officer at the moment of detention would warrant a person of reasonable caution to believe the action taken was appropriate. See *Aviles v. State,* 23 S.W. 3d 74, 77 (Tex. App.-Houston [14th Dist] 2000, pet. ref'd).

Furthermore, reasonable suspicion is a very low standard. Reasonable suspicion requires considerably less proof than proof of wrong-doing by the preponderance of the evidence. See *United States v. Sokolow,* 490 U.S. 1, 7 (1989). Indeed reasonable suspicion requires less proof than probable cause which itself is "far short of preponderance of the evidence." See *York v. State,* 342 S.W. 3d 528, 543 n. 86 (Tex. Crim. App. 2011). Reasonable suspicion requires only "some minimal level of objective justification" to justify a traffic stop. See *Hamal,* 390 S.W. 3d at 306.

In this case the testimony of Detective Paine established that he

saw the Appellee commit a traffic offense. [RR-I-14]. Sergeant Fetters likewise testified that it appeared to him that Appellee's vehicle "was into the intersection" though Sergeant Fetters did caution that his vantage point was not as good as Detective Paine's. [RR-I-75]. Detective McDonald similarly noted that he observed Appellee's vehicle stopped "past the curb" at the intersection of Stayton and Brownson Street, though Detective McDonald did state that he did not observe the vehicle fail to stop prior to that. [RR-I-66].

The suspect conduct Detective Paine and Sergeant Fetters observed (Appellee, when approaching an intersection with a stop sign, allegedly stopping his vehicle in the intersection) is conduct that if true either constituted a traffic offense or is conduct that it was reasonable for the officers to believe constituted a traffic offense. Therefore as long as it was reasonable for the officers to believe they had observed a traffic violation then the officers had reasonable suspicion to initiate a traffic stop on Appellee's vehicle.

Now in the present case the trial court made the specific factual determination that Appellee's vehicle did not actually enter the intersection. [CR-I-38]. As such the trial court made a factual determination that a traffic offense did not actually occur in this case. The trial court also made a

specific factual determination that Sergeant Fetters and Detective McDonald did not observe the Appellee's commit the alleged traffic offense. [CR-I-37]. Those factual determinations must be respected since it is the trial court's prerogative as the fact finder to decide such factual questions. However, those determinations are not dispositive of the question of whether the officers had reasonable suspicion that a traffic offense occurred because the State is not required to prove a traffic offense actually happened in order to establish reasonable suspicion of the traffic offense.

The trial court's legal analysis was therefore flawed because after concluding that the Appellant did not enter the intersection, it concluded there was no traffic violation and from that concluded that there was not reasonable suspicion to justify the traffic stop. [CR-I-38]. The trial court's ruling thus effectively required the State to prove the traffic offense actually happened in order to establish reasonable suspicion to justify the traffic stop. This is improper because that is not what Texas law requires in order to justify a traffic stop. The State does not have to prove a traffic violation actually occurred; it just has to show that the investigating officers had reasonable suspicion that a traffic violation occurred. See *Ford,* 158 S.W. 3d at 492. If reasonable suspicion is established then the traffic stop is valid

even if the suspect ultimately turns out to be completely innocent of the suspected offense which provided the initial reasonable suspicion.

In this case even with the trial court discounting the testimony of Sergeant Fetters and Detective McDonald as to what they observed about Appellee's vehicle at the Stayton-Brownson intersection, the testimony of Detective Paine is sufficient by itself to establish reasonable suspicion that a traffic offense occurred. Detective Paine was unambiguous that he observed Appellee's vehicle stop "well past the curb" with the car "from the front tires forward" being in the intersection. [RR-I-14]. Detective Paine's testimony also established that there was sufficient light and he had an adequate vantage point and close position to observe Appellee's vehicle. [RR-I-13-14]. And unlike with Sergeant Fetters, the trial court did not issue any findings stating that Detective Paine did not actually observe what he testified to observing. [CR-I-36-38]. Thus Detective Paine's testimony established specific, articulable facts that made it reasonable for him to believe Appellee had committed a traffic offense.

Now the trial court could have chosen to disbelieve Detective Paine's testimony about what he testified to observing on July 28, 2014, or the trial court could have concluded Detective Paine's testimony was insufficiently reliable to provide a basis for reasonable suspicion, but the trial court did not

do so. The trial court issued explicit findings of fact for this case, and nowhere in those findings of fact did the trial court ever dispute the honesty or reliability of Detective Paine's testimony. [CR-I-36-38]. The trial court also did not make any verbal pronouncement that it found Detective Paine's testimony to be lacking in credibility or reliability. [RR-I-90-91]. And at no point in this case did the trial court ever conclude that Detective Paine lied about what he testified to observing. [RR-I-90-91; CR-I-36-38]. Nor did the trial court make any findings that Detective Paine's testimony that he observed Appellee commit a traffic violation was unreasonable. [RR-I-90-91; CR-I-36-38].

A trial court is required to issue its "essential findings" that explain the reasoning behind its decision on a motion to suppress upon the request of the losing party to said motion. See *Cullen,* 195 S.W. 3d at 699. As such since the trial court did not issue any findings stating that it found Detective Paine's testimony to not be credible or reliable, such a determination was clearly not part of the trial court's essential findings for this case. And indeed the State contends that since *Cullen* requires the trial court to include the essential findings behind its ruling in its findings of fact, the fact that the trial court did not make any findings stating that it found Detective Paine's testimony to be lacking in credibility or reliability, necessarily requires a

conclusion that the trial court did find Detective Paine to be a credible and reliable witness, since the court would have been obligated to state otherwise in its findings if it did not find Detective Paine to be credible and reliable. (The same obligation would obviously not apply in reverse since the trial court finding Detective Paine to be credible and reliable is obviously not an essential finding that has to be included in the trial court's findings if the trial court's determination that Detective Paine was credible and reliable did not ultimately impact its determination in this case.) Nor is there anything inconsistent with the trial court seemingly accepting Detective Paine as a credible and reliable witness and still concluding that he was wrong that Appellee committed a traffic offense. It is entirely possible to believe that someone reasonably and honestly believes something and still believe that person is wrong about what they saw. And Detective Paine can be wrong about what he saw and still have reasonable suspicion to justify a traffic stop.

Since the trial court did not find that Detective Paine was being untruthful or that his testimony was unreliable, it is clear that Detective Paine's testimony was sufficient to establish reasonable suspicion that Appellee committed a traffic offense (or at least had engaged in conduct that it was reasonable for Detective Paine to believe constituted a traffic offense.)

Detective Paine's testimony may not have been enough to prove that Appellee actually committed the suspected traffic offense, but it did not have to be since proving the traffic offense actually happened is not required to establish reasonable suspicion for a traffic stop. Detective Paine's observations that he believed he observed what he reasonably believed was a traffic offense are sufficient under the totality of the circumstances present in this case to establish the minimal level of objective justification needed to establish reasonable suspicion to justify a traffic stop. Therefore the trial court's legal determination to the contrary (which seemingly required the State to prove an actual traffic offense occurred rather than just prove that Detective Paine had reasonable suspicion that a traffic offense occurred) was reversible error and must be overturned.

## VI. The free air sniff on and search of Appellee's vehicle were lawful.

The trial court based its entire ruling on the question of whether there was reasonable suspicion for the stop of Appellee's vehicle and did not really address the legality of the free air sniff of Appellee's vehicle or the subsequent search of the vehicle which found the contraband narcotics. [CR-I-36-38]. Since the trial court did not submit written findings on these matters, it is clear that consideration of these matters was not part of the trial court's "essential findings" as to why it granted the motion to suppress. The

trial court would have been obligated to address these issues in its written findings of fact if these issues had formed any part of the trial court's decision to grant the motion to suppress. See *Cullen,* 195 S.W. 3d at 399. Therefore from the fact that the trial court did not address these issues in its findings of fact, it is clear that the trial court found Detective Gibbs testimony to be credible and reliable and did not find anything legally objectionable about either the free air sniff or the search of Appellee's vehicle. With that in mind the State shall still address the legality of the free air sniff of Appellee's vehicle and the search of Appellee's vehicle, so as to avoid any question of procedural default on these matters.

The evidence presented at the suppression hearing established that Detective Gibbs could legally conduct a free air dog sniff on Appellee's vehicle. A sniff of the exterior of a car be a trained canine during a lawful traffic stop is not a search within the meaning of the Fourth Amendment. See *Illinois v. Caballes,* 543 U.S. 405, 409 (2005); *Branch v. State,* 335 S.W. 3d 893, 900 (Tex. App.-Austin 2011, pet. ref'd). However, the officer may not unduly prolong the traffic stop to conduct the free air sniff, unless the officer first develops reasonable suspicion that the car contains contraband. See *Caballes,* 543 U.S. at 407; *Branch,* 335 S.W. 3d at 900. In the present case both of those factors justified the free air sniff as Detective

Gibbs did not unduly prolong the traffic stop by conducting the free air sniff, and she already had reasonable suspicion that the car contained contraband narcotics prior to conducting the free air sniff.

In terms of prolonging the traffic stop, Texas courts have rejected consideration of a rigid time limitation for investigative detentions and instead look to "whether the police officer diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." See *Kothe v. State,* 152 S.W. 3d 54, 64 (Tex. Crim. App. 2004). It is only if the officer's actions "unduly prolong" the detention that they are unreasonable, and the Court of Criminal Appeals has explicitly rejected a requirement of a "least intrusive means" of investigation standard. *Id.* at 65-66.

Detective Gibbs testimony established that she conducted the free air sniff approximately seven minutes after initiating the traffic stop. [RR-I-44]. This time line is confirmed by the video of the traffic stop. [State's Exhibit 1]. Detective Gibbs also established that she did not have to send away for her canine partner, Robby, since he was already with her at the time of the initial stop on Appellee's vehicle. [RR-I-46]. Detective Gibbs further established that the traffic stop was not complete at the time she conducted the free air sniff because she still needed to run the Appellee and his

passenger's name for possible warrants and run the paper plates on Appellee's vehicle. [RR-I-45]. A review of State's Exhibit 1 likewise shows that Detective Gibbs conducted the traffic stop in a diligent manner, moving quickly from questioning the Appellee, to questioning his passenger, to conducting the free air sniff. [State's Exhibit 1]. The questions Detective Gibbs asked of the Appellee were appropriate questions for an investigating officer to ask a detained motorist. See State's Exhibit 1; *Parker v. State,* 297 S.W. 3d 803, 809 (Tex. App.-Eastland 2009, pet. ref'd)(holding that an officer may ask the driver for their identification, driver's license, information about the ownership of the vehicle, proof of insurance, and information concerning the destination and purpose of the trip.) It was likewise appropriate for Detective Gibbs to ask similar questions to the passenger. See *Duff v. State,* 546 S.W. 2d 283, 286 (Tex. Crim. App. 1977); *Parker,* 297 S.W. 3d at 809. Therefore it is clear that Detective Gibbs did not unduly prolong the traffic stop by conducting the free air sniff on Appellee's vehicle which in turn means that the free air sniff was lawful.

In the alternative, even if it was deemed that Detective Gibbs did unduly extend the traffic stop by conducting the free air sniff on Appellee's vehicle, that free air sniff was still lawful as Detective Gibbs already had obtained reasonable suspicion that Appellee's vehicle contained contraband

prior to initiating the free air sniff. See *Lambeth v. State,* 221 S.W. 3d 831, 836 (Tex. App.-Ft. Worth 2007, pet. ref'd).

The investigating officers already had good cause to believe that Appellee was traveling from a known drug location. [RR-I-9]. Admittedly, the surveillance team could not definitively place Appellee at the drug house [RR-I-11], but they could place him on the portion of street that contained only five houses included that suspected drug house. [RR-I-10-11; 31]. The surveillance team also observed Appellee driving in a manner that was consistent with someone trying to shake off police surveillance. [RR-I-13, 58, 73].

Furthermore, when Detective Gibbs made contact with the Appellee and his passenger, both Appellee and the passenger were acting nervously. [RR-I-40]. Detective Gibbs also indicated she recognized Appellee from a previous narcotics investigation she had worked within the last three years. [RR-I-41]. She further established that Appellee was evasive with her about where he had come from [RR-I-42] and admitted to prior drug history. [RR-I-42]. She also noted that the passenger likewise admitted to prior drug history [RR-I-43] and claimed that they had come from McDonalds. *Id.* And perhaps most significantly, the passenger made a statement, insisting that they had come from McDonalds, which was wholly inconsistent with

what the surveillance team had observed as they had not seen the Appellee's vehicle stop at any McDonalds. [RR-I-31, 77].

All of this information together gave the officers reasonable suspicion that there was contraband in Appellee's vehicle. Nor does it matter that Detective Gibbs (the detaining officer) may not have been aware of everything observed by the surveillance team. The detaining officer is not required to be personally aware of every fact that objectively establishes reasonable suspicion to detain; rather the question is does the cumulative information known to all the officers involved in the case establish reasonable suspicion. See *Derichsweiler,* 348 S.W. 3d at 914. It likewise does not matter that some of the circumstances used to establish reasonable suspicion might look innocent in isolation; so long as those circumstances when considered together reasonably suggest the imminence of criminal conduct than reasonable suspicion is established. *Id.*

The investigating officers had information that the Appellee, who had a known history of drug involvement, left an area with a known drug house, drove in a manner that was consistent with someone trying to shake police surveillance, was nervous when confronted by the police, was traveling with a passenger who also had drug history, was evasive about where he had come from, and had the passenger make a false statement about where they

had been prior to being stopped by the police. Those specific and articulable facts, and the rational inferences that can be made from those facts, would certainly give a reasonable officer reasonable suspicion to believe the Appellee and his passenger had narcotics in their vehicle.

Now admittedly nervousness by itself and prior criminal history by itself do not establish reasonable suspicion. See *Hamal,* 390 S.W. 3d 302 at 308. However, both of those factors can be considered in conjunction with other factors to establish reasonable suspicion. *Id.* And nervousness coupled with evasive or deceptive behavior has frequently been held as sufficient to establish reasonable suspicion. See *Byron v. State,* 07-05-0131, 2006 WL 1490677 at 1 (Tex. App.-Amarillo 2006, pet. ref'd)(mem. op)(not designated for publication); *Estrada v. State,* 30 S.W. 3d 599, 603 (Tex. App.-Austin 2000, pet. ref'd); *Powell v. State,* 5 S.W. 3d 369, 377 (Tex. App.-Texarkana 1999, pet. ref'd). Thus all of the factors known to the police prior to the initiation of the free air sniff when taken together are sufficient to support a finding of reasonable suspicion that there was contraband within Appellee's vehicle. And that in turn means that Detective Gibbs had sufficient legal basis to extend the traffic stop long enough to conduct a free air sniff of Appellee's vehicle.

The free air sniff itself was likewise properly conducted. Detective Gibbs' testimony and the certification documents offered into evidence, established that Detective Gibbs was a certified canine operator and that her canine partner, Robby, was certified to conduct free air sniffs on July 28, 2014, had extensive history performing free air sniffs, and had proven reliable at locating narcotics during those free air sniffs. [RR-I-46-48; State's Exhibit 3]. Detective Gibbs then confirmed that Robby did alert for the odor of narcotics on Appellee's vehicle. [RR-I-48-49].

It is well settled Texas law that when a trained drug detection dog alerts on a vehicle the officer's then have probable cause to search the vehicle. See *Branch,* 335 S.W. 3d at 901; *Haas v. State,* 172 S.W. 3d 42, 54 (Tex. App.-Waco 2005, pet. ref'd); *Harrison v. State,* 7 S.W. 3d 309, 311 (Tex. App.-Houston [1st Dist] 1999, pet. ref'd). And under the "Automobile Exception" when there is probable cause that a vehicle contains evidence of a crime, a warrantless search of the vehicle is permissible. See *Powell v. State,* 898 S.W. 2d 821, 827 (Tex. Crim. App. 1994). As such the probable cause that Appellee's vehicle contained narcotics that was established by the trained and certified narcotics detection dog Robby alerting on the vehicle, made it legal for the investigating officers to search Appellee's vehicle without a warrant, and since the search of the vehicle was legal, the evidence

obtained from that search was lawfully obtained. Accordingly, the trial court erred by granting Appellee's motion to suppress.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the State prays that this Honorable Court reverse the judgment of the trial court.

.

**Respectfully submitted,**


**STEPHEN B. TYLER**
**CRIMINAL DISTRICT ATTORNEY**

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
E-mail: bguy@vctx.org
Telephone: (361) 575-0468
Facsimile: (361) 576-4139


**ATTORNEYS FOR THE APPELLANT,**
**THE STATE OF TEXAS**

# CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I, Brendan Wyatt Guy, Assistant Criminal District Attorney, Victoria County, Texas, certify that the number of words in Appellant's Brief submitted on April 17, 2015, excluding those matters listed in Rule 9.4(i)(1) is 9,455.

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
E-mail: bguy@vctx.org
Telephone: (361) 575-0468
Facsimile: (361) 576-4139

## <u>CERTIFICATE OF SERVICE</u>

I, Brendan Wyatt Guy, Assistant Criminal District Attorney, Victoria County, Texas, certify that a copy of the foregoing brief has been served on William White, P.O. Box 7422, Victoria, Texas, Attorney for the Appellee, Uyless Troy Bland, by depositing same in the United States Mail, postage prepaid on the day of April 17, 2015.

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
E-mail: bguy@vctx.org
Telephone:  (361) 575-0468
Facsimile: (361) 576-4139