

# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-11-00108-CR
### No. 10-11-00109-CR
### No. 10-11-00110-CR

**THE STATE OF TEXAS,**

**Appellant**

 **v.**

**JAVARI EDWARD POLICE,**

**Appellee**

_____

### From the County Court at Law No. 2
### Ellis County, Texas
### Trial Court Nos. 1010773CR; 1010774CR; and 1010775CR

_____

## O P I N I O N

_____

The State is appealing from an order granting Javari Edward Police's motions to suppress evidence in each of three causes based on a lack of reasonable suspicion to initiate a traffic stop by the arresting officer. The State complains that the trial court erred by finding that the traffic stop was unlawful because no actual criminal offense was observed by the officer and by finding that the other facts surrounding the traffic stop did not create reasonable suspicion. We affirm the orders of the trial court.

*Appellee's Brief*

Initially, we must address Police's failure to file a brief in this matter. The appellee's brief was due on August 31, 2011. On September 6, 2011, after not receiving a brief, this Court sent a letter instructing Police to file a brief or a request for extension within 14 days or to notify the Court that no brief will be filed. Police filed a motion for extension on September 21, 2011, which was granted until September 30, 2011. A letter was sent to Police on October 13, 2011 advising him that we would proceed to disposition with or without the appellee's brief. No brief has been filed, and Police has not requested any additional time to file a brief.

There is no rule specifically addressing the effect of the appellee's failure to file a brief in response to an appellant's brief in a criminal appeal. We recently addressed this issue in *State v. Fielder*, No. 10-11-00162, 2011 Tex. App. LEXIS 10101 (Tex. App.—Waco Dec. 21, 2011, no pet. h.). In that decision, we determined that the appellee's failure to file a brief constitutes a confession of error. *Id*. (citing *Siverand v. State*, 89 S.W.3d 216, 220 (Tex. App.—Corpus Christi 2002, no pet.); *Hawkins v. State*, 278 S.W.3d 396, 399 (Tex. App.—Eastland 2008, no pet.)). This confession of error is not conclusive. *Saldano v. State*, 70 S.W.3d 873, 884 (Tex. Crim. App. 2002); *Siverand v. State*, 89 S.W.3d at 220. We must make an independent examination of the merits of the issues presented for review. *State v. Fielder*, 2011 Tex. App. LEXIS 10101 at *3 (citing *Siverand v. State*, 89 S.W.3d at 220). In that review we are limited to the arguments advanced by the

appellee in the trial court so that we do not advance new arguments on behalf of the appellee. *Id.* (citing *Saldano v. State*, 70 S.W.3d at 884; *Hawkins v. State*, 278 S.W.3d at 399; *Siverand v. State*, 89 S.W.3d at 220).

## Motion to Suppress

A hearing was conducted pursuant to a pre-trial motion to suppress evidence where Police complained that the officer who initiated the traffic stop on Police's vehicle did not have reasonable suspicion to stop him for any reason, either for a traffic violation or any potentially suspicious circumstances surrounding the traffic stop. The State argued that Police did indeed violate section 544.010 of the Transportation Code; however, the State contended that even if the officer was incorrect in his understanding of that statute, there were other independent reasons for the stop which created reasonable suspicion to stop Police's vehicle. The officer was the sole witness in the hearing, and the trial court granted the motion to suppress. The trial court entered findings of fact and conclusions of law. The State appealed the judgment.

## Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be

given to their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's ruling on those questions de novo. *Amador*, 221 S.W.3d at 673; *Johnson*, 68 S.W.3d at 652-53.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818-19. We then review the trial court's legal ruling de novo unless its explicit findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 819.

### Burden of Proof

In a hearing on a motion to suppress evidence based on an alleged Fourth Amendment violation, the initial burden of producing evidence that rebuts the

presumption of proper police conduct is on the defendant. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). This burden may be met by establishing that a search or seizure occurred without a warrant. *Id*. After this showing is made by the defendant, the burden of proof shifts to the State, at which time the State is required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id*. In this proceeding, the State stipulated that the stop was made without a warrant and assumed the burden of proof regarding whether reasonable suspicion for the stop existed.

*Reasonable Suspicion*

An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997) (*citing Terry v. Ohio*, 392 U.S. 1, 29, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1968)). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). Otherwise stated, those specific, articulable facts must show unusual activity, some evidence that connects the detained individual to the unusual activity, and some indication that the unusual activity is related to crime. *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App.

2011). This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Ford*, 158 S.W.3d at 492. A reasonable suspicion determination is made by considering the totality of the circumstances. *Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007).

A traffic stop is justified when the officer has reasonable suspicion to believe that a traffic violation has occurred. *See Goudeau v. State*, 209 S.W.3d 713, 715-16 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The State bears the burden of demonstrating the reasonableness of the stop. *See id*. at 716. The State satisfies its burden upon a showing of an objective basis for the stop. *See Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). We must ask whether a person of reasonable caution, looking at the facts available to the officer at the moment of the investigation, would believe that a traffic violation occurred. *Goudeau*, 209 S.W.3d at 716.

The fact that the officer made the stop for a reason other than the occurrence of the traffic violation is irrelevant as long as a traffic violation that would have objectively justified the stop occurred. *See Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996); *Crittenden v. State*, 899 S.W.2d 668, 674 (Tex. Crim. App. 1995). An officer's mistaken, though honest, misunderstanding of the traffic law, however, will not justify a stop. *United States v. Lopez-Valdez*, 178 F.3d 282, 288 (5th Cir. 1999); *Goudeau*, 209 S.W.3d at 716; *see also Fowler v. State*, 266 S.W.3d 498, 504-05 (Tex. App.— Fort Worth 2008, pet. ref'd).

*The Facts*

The facts that led to the officer's traffic stop of Police are as follows: at around midnight, an officer observed a vehicle he did not recognize driving through his patrol area which he had patrolled for several years. He followed the vehicle and got directly behind it so he could run a license check. Police was the driver of the vehicle. Police almost immediately turned right in front of the officer into a neighborhood known for burglaries and narcotics transactions. The officer did not observe any traffic violations in this turn. The street onto which Police turned was in essence a horseshoe shape. The officer did not follow Police onto that street, but waited for him to come out, which Police did in less than a minute and a half. Police approached the intersection which had a stop sign, but no crosswalk or stop line. Police's vehicle came to a complete stop at a point past the stop sign but did not enter the intersection.

The officer believed that Police had committed a traffic violation by stopping at a point past the stop sign, citing section 544.010 of the Transportation Code. Because of this, the officer initiated a traffic stop which ultimately resulted in the discovery of a weapon, marijuana, and some other controlled substance, and Police was arrested for those offenses. Additionally, in the suppression hearing the officer indicated that his reasons for the stop were also because he did not recognize the vehicle, the lateness of the hour, the fact that Police turned right almost immediately after the officer got behind him, the reputation of the neighborhood into which Police turned for burglaries

and narcotics, and the short time that Police was in the neighborhood. However, the officer testified that he did not feel that he could initiate a traffic stop until the alleged traffic violation occurred.

*Transportation Code Section 544.010*

Section 544.010(c) of the Transportation Code provides three different stop sign requirements: (1) if a crosswalk exists, the driver shall stop before entering the crosswalk; (2) if no crosswalk exists, the driver shall stop at a clearly marked stop line; and (3) if no stop line exists, the driver shall stop "at the place nearest the intersecting roadway where the operator has a view of approaching traffic on the intersecting roadway." TEX. TRANSP. CODE ANN. § 544.010(c) (Vernon 1999). The State contends that this statute requires that an individual stop behind the stop sign if that person has a view of approaching traffic. At the hearing, Police argued that the stop sign is not determinative of where the stop must occur and that since Police did not enter the intersection, no traffic violation occurred.

*Statutory Construction*

Because statutory construction is a question of law, our review is de novo. *Spence v. State*, 325 S.W.3d 646, 650 (Tex. Crim. App. 2010). We focus on the literal text to determine the objective meaning of that text when it was enacted. *Id.*; *Mahaffey v. State*, 316 S.W.3d 633, 637 (Tex. Crim. App. 2010). We are guided by the text itself because "the text of the statute is the law," "the text is the only definitive evidence of

what the legislators . . . had in mind when the statute was enacted into law," and "the [L]egislature is constitutionally entitled to expect that the judiciary will faithfully follow the specific text that was adopted." *Id*. (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). When the meaning of the statutory text should have been plain to the legislators who voted on it, we give effect to that plain meaning unless "application of a statute's plain language would lead to absurd consequences" or "the language is not plain but rather ambiguous." *Id*. We presume that each word in the statute has a purpose and that the words not defined in the statute are used in their ordinary and common sense. *Prudholm v. State*, 333 S.W.3d 590, 594 (Tex. Crim. App. 2011); *see* TEX. CODE CRIM. PROC. ANN. art. 3.01 (West 2005) ("All words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specially defined."); *see also* TEX. GOV'T CODE ANN. §§ 311.002 (addressing applicability of Code Construction Act), 311.011(a) (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

The plain language of the statute does not refer to a stop sign as an indicator of anything other than a signal that a stop is required prior to entering the intersection. Certainly, if a requirement to stop behind a stop sign was intended when the statute was enacted it could have been specifically articulated in that section. However, the Legislature chose to require that the stop take place "at the place nearest the intersecting

roadway where the operator has a view of approaching traffic on the intersecting roadway." TEX. TRANSP. CODE ANN. § 544.010(c). We find that the plain language of the statute indicates that a stop must be made exactly where it states, which may or may not be behind a stop sign. The trial court determined that Police came to a complete stop at a point past the stop sign but not in the intersection, which the trial court determined as a matter of law did not constitute a traffic violation of section 544.010. The State did not argue before the trial court or in its brief to this Court that any other traffic violation occurred.

The trial court's finding of fact that Police stopped his vehicle at the place nearest the roadway where he had a view of approaching traffic is supported by the evidence. Therefore, there was no traffic violation. The officer's honest, but mistaken belief about the law does not justify the stop.[1] *See United States v. Lopez-Valdez*, 178 F.3d 282, 288 (5th Cir. 1999); *Goudeau v. State*, 209 S.W.3d 713, 716 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see also Fowler v. State*, 266 S.W.3d 498, 504-05 (Tex. App.—Fort Worth 2008, pet. ref'd). Because there was no traffic violation, we must determine whether reasonable suspicion otherwise existed to justify the traffic stop.

*Other Factors*

The trial court's findings of fact and conclusions of law state that prior to Police's

---

[1] This holding may be in conflict with this Court's holding in *Joubert v. State*, and to the extent that there is a conflict, that holding is expressly overruled. *See Joubert v. State*, 129 S.W.3d 686 (Tex. App.—Waco 2004, no pet.).

alleged traffic violation, "the credible evidence indicates there were no articulable facts to justify the detention of the Defendant." Further, those findings state that "[a]lthough the officer suggested there may have been other facts and factors that could be considered to support his stop of the Defendant's vehicle the Court was not persuaded to believe that other facts were actually relied upon by the officer in initiating the stop. The Court was not presented with or persuaded by credible evidence to believe that sufficient facts existed in this instance to justify the detention of the Defendant." However, because the standard is objective rather than subjective, to the degree that the trial court's conclusions are based on the officer's actual intent, we disregard those conclusions. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

At the suppression hearing and in his supporting brief to the trial court, Police relied on the recent decision of the Court of Criminal Appeals in *Crain v. State* to establish that the additional factors relied upon by the officer were insufficient to constitute reasonable suspicion. *Crain v. State*, 315 S.W.3d 43 (Tex. Crim. App. 2010). The facts in *Crain* leading up to the officer's contact with Crain were that Crain was walking late at night in a residential area in which burglaries occurred mostly after midnight and when Crain saw the police officer's vehicle drive past him, he "grabbed at his waist." *Crain*, 315 S.W.3d at 53. The officer acknowledged that he did not have a reason to arrest Crain at that time. There was no evidence regarding a specific crime or burglary that had occurred or that Crain was engaged in illegal behavior. The Court of

Criminal Appeals stated that "[n]either time of day nor level of criminal activity in an area are suspicious in and of themselves; the two are merely factors to be considered in making a determination of reasonable suspicion." *Id*. The court further held that those factors did not constitute reasonable suspicion. *Id*.

The State does not respond to this contention; rather, the State argues that the officer was not required to pinpoint a particular crime, citing *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011). In *Derichsweiler*, the Court of Criminal Appeals determined that reasonable suspicion existed in an "admittedly close case" that involved otherwise innocent behavior. *See Derichsweiler*, 348 S.W.3d at 917 (Tex. Crim. App. 2011). *Derichsweiler*, though, is distinguishable from this case. In *Derichsweiler*, noncriminal behavior—repeatedly stopping near, staring, and smiling in a strange manner at other people and vehicles in public parking lots—was held sufficient to allow a reasonable person to conclude "that criminal activity is afoot." *Id*. at 915. The court characterized Derichsweiler's conduct as "bizarre to say the least." *Id*. at 917. The court emphasized Derichsweiler's conduct involved "the repetition of similar, apparently scrutinizing behavior" and was "persistent, if admittedly noncriminal." *Id*. In other words, the conduct in *Derichsweiler* involved a pattern of bizarre behavior.

This is not the situation the officer in this case faced. The facts before the officer were: (1) it was around midnight; (2) Police's car was unfamiliar to him; (3) when he pulled behind Police's vehicle to run a license check, Police almost immediately turned

right onto a street that curved in a horseshoe shape; (4) rather than follow Police, the officer waited for Police to exit the neighborhood; (5) the officer did not believe that Police resided in that neighborhood, having patrolled that area for approximately four years; (6) the neighborhood had a reputation for burglaries and narcotics transactions; (7) Police emerged on the other end of the street in less than ninety seconds; (8) Police pulled up past the stop sign at that intersection but not in the intersecting roadway; (9) Police turned onto the original roadway and the officer initiated the traffic stop. The trial court's findings of fact also included that "[t]he officer did not observe any traffic violations, irregularities, dangerous, hazardous or reckless behavior of the Defendant before, during or immediately after turning right" at the first turn. Further, the findings stated that "[t]he officer did not observe any illegal, hazardous or reckless driving behaviors as the vehicle traveled on the roadway back to the original roadway." These findings are supported by the record.

With these facts, Police's behavior was not bizarre and nothing suggests a pattern or repetition of unusual behavior as was found in *Derichsweiler*. The noncriminal, not terribly unusual, nonrepetitive behavior observed in this case was insufficient to objectively support a belief that criminal activity was or soon would be afoot. The only behavior of Police's that could be construed as suspicious was his making the first turn, although the trial court's fact finding was that it was not irregular, dangerous, hazardous, or reckless is supported by the record. *See State v. Kelly*, 204

S.W.3d 808, 818-19 (Tex. Crim. App. 2006). There was no evidence that Police made any furtive or otherwise suspicious gestures nor was he known to the officer as having any criminal background or association with known criminals or drug users; he simply made a legal turn in front of an officer into a neighborhood where criminal activity occurred previously. Additionally, the facts present in *Derichsweiler* presented a "close call" but ultimately the stop was found to be reasonable, in part "if only by [the police's] presence to avert an inchoate offense." *Derichsweiler*, 348 S.W.3d at 917. This was also not the case here. The circumstances known to the officer at the time of the stop were not sufficient to establish reasonable suspicion to justify the traffic stop. We overrule the State's sole issue.

*Conclusion*

Having overruled the State's sole issue, we affirm the orders of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
     (Justice Davis concurs with a note)*
Affirmed
Opinion delivered and filed January 4, 2012
Publish
[CR25]

    *("I don't agree that *Joubert v. State* should be overruled.")