PD-1316-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/21/2015 9:40:10 PM
Accepted 10/22/2015 1:21:37 PM
ABEL ACOSTA
CLERK

## NO. PD-1316-15

# IN THE
# COURT OF CRIMINAL APPEALS OF TEXAS

## CRISTAN DRAYCE WILLIAMS
### v.
## THE STATE OF TEXAS

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

Appeal from
The Brazos County Court At Law No. 2
Trial Court Cause Number No: 12-02846-CRM-CCL2
And
The Tenth Court of Appeals of Texas
Cause Number **10-14-00307-CR**

LAW OFFICE OF BENTON ROSS WATSON
120 E. 1st Street
P.O. Box 1000
Cameron, Texas 76520
(254) 307-8181
(254) 231-0212—Facsimile
ross@texastopdefense.com
State Bar No. 24077591

## ORAL ARGUMENT REQUESTED

FILED IN
COURT OF CRIMINAL APPEALS

October 22, 2015

ABEL ACOSTA, CLERK

## STATE OF TEXAS

Ms. Rodney W. Anderson
Brazos County Attorney
Brazos County Attorney's Office
300 East 26th Street
Suite 1300
Bryan, Texas 77803

## APPELLANT'S TRIAL COUNSEL

John Paschall
P.O. Box 681
Franklin, Texas 77856

## APPELLANT'S COUNSEL ON APPEAL

Benton Ross Watson
120 E. 1st Street
P.O. Box 1000
Cameron, Texas 76520

## TRIAL COURT JUDGE

The Honorable Jim Lock
County Court Judge
300 E. 26th, Ste. 214
Bryan, Texas 77803

# TABLE OF CONTENTS

NAMES OF THE PARTIES TO THE FINAL JUDGMENT ..................I
TABLE OF CONTENTS..................................................................II
INDEX OF AUTHORITIES............................................................IV
STATEMENT REGARDING ORAL ARGUMENT............................VI
STATEMENT OF THE CASE........................................................VI
STATEMENT OF PROCEDURAL HISTORY..................................VII
GROUNDS FOR REVIEW .............................................................VIII

1. The Waco Court of Appeals disregarded established case law from this Court, the United States Supreme Court, and other Texas courts by finding the stop lawful.

2. The Waco Court of Appeals applied an incorrect standard of review, and gave undue deference to the determinations of the trial court and officer.

I. GROUNDS RESTATED:.....................................................................1

    The Waco Court failed to follow case law of this Court, the United States Supreme Court, and other Texas courts. ..................................1

**A.** Reasons for Granting Review: ...........................................................2
**B.** Factual Basis. ...............................................................................3
**C.** Argument. ...................................................................................5

1. The Waco Court ignored Fourth Amendment precedent requiring that behavior provide a sufficient link to criminal activity........................5

  a. The Waco Court erred by finding Mr. Williams's driving behavior unusual, and failing to discuss how it was unusual. ...........................6

  b. The Waco Court erred by finding, and failing to discuss how, Mr. Williams's driving behavior was reasonably linked to DWI..............8

2. The Waco Court erred by conducting an improper review of the objective facts, which did not support the officer's conclusion that Mr. Williams's driving behavior was linked to DWI. .......................11

  a. The Waco Court could not uphold the stop because the objective facts failed to support Sergeant Summers' conclusion that Mr. Williams's behavior was linked to crime. .......................................11

  b. Officer training and experience also could not supply a basis for upholding the stop............................................................................13

---

**D.** Conclusion. ...................................................................... 14

PRAYER ........................................................................... 15

CERTIFICATE OF SERVICE ............................................. 15

CERTIFICATE OF COMPLIANCE...................................... 17

APPENDICES................................................................... 18

    A-1: Memorandum Opinion

    A-2: Order Denying Rehearing

**United States Supreme Court Cases**

*Navarette v. California,*
  134 S.Ct. 1683 (1968)................................................................ 9
*Terry v. Ohio,*
  392 U.S. 1 (1968)....................................................................... 5
*United States v. Cortez,*
  449 U.S. 411 (1981)............................................................. 13, 14
*United States v. Sokolow,*
  490 U.S. 1 (1989)....................................................................... 5


**Texas Court of Criminal Appeals Cases**

*Arguellez v. State,*
  409 S.W.3d 657 (Tex. Crim. App. 2013).................................... 5
*Derichsweiler v. State,*
  348 S.W.3d 906 (Tex. Crim. App. 2011)................................. 5, 9
*Ford v. State,*
  158 S.W.3d 488 (Tex. Crim. App. 2005).............................. 12, 13
*Foster v. State,*
  326 S.W.3d 609 (Tex. Crim. App. 2010)................................ 9, 10
*State v. Kerwick,*
  393 S.W.3d 270 (Tex. Crim. App. 2013).................................... 5
*Wade v. State,*
  422 S.W.3d 661 (Tex. Crim. App. 2013)................... 1, 2, 11, 12
*White v. State,*
  574 S.W.2d 546 (Tex. Crim. App. 1978)................................ 6, 14
*Woods v. State,*
  956 S.W.2d 33, 38 (Tex. Crim. App. 1997)............................... 5


**Texas Appellate Court Cases**

*Davy v. State,*
  67 S.W.3d 382 (Tex. App—Waco [10th Dist.] 2001, no pet.) ................... 9
*Gamble v. State,*
  8 S.W.3d 452 (Tex. App.—Houston 1999, no pet.) ............................ 8, 14
*State v. Jevari Edward Police,*
  377 S.W.3d 33 (Tex. App.—Waco [10th Dist.] 2012, no pet.) ............ 8, 10
*Thompson v. State,*

408 S.W.3d 614 (Tex. App.—Austin 2013, no pet.) ................................... 5

*Williams v. State,*
    No. 10-14-00307-CR, 2015 Tex. App. LEXIS 7928 (Tex. App.—Waco [10th
    Dist.] July 30, 2015, pet. filed) (mem. op., not designated for publication.)..1, 6

**Other Authorities**

*United States v. Jenson,*
    462 F.3d 399 (5th Cir. 2006) .................................................... 13

*United States v. Martin*
    679 F. Supp. 2d 723 (W.D. La. 2009)....................................... 13

**United States Constitution**

U.S. CONST. amend. IV & XIV. ................................................... II, VI, 5, 13

**Texas Constitution**

TEX. CONST. art. I, § 9 ............................................................ VI

**Texas Rules of Appellate Procedure**

TEX. R. APP. P. 47.1. .............................................................. 2, 15

TEX. R. APP. P. 47.4. .............................................................. 7

TEX. R. APP. P. 66.3 (a), (c), (f) .................................................... 2

**Texas Code of Criminal Procedure**

TEX. CODE CRIM. PROC. ANN. art. 38.23 ..................................... VI

## STATEMENT REGARDING ORAL ARGUMENT

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL

APPEALS:

Petitioner requests oral argument. Argument would benefit the

Court because the facts present a unique search and seizure question not

thoroughly discussed by Texas appellate courts, important constitutional

concepts are implicated, and the decision would affect daily actions of

ordinary citizens.

## STATEMENT OF THE CASE

This appeal challenges a trial court's denial of a motion to suppress

regarding an illegal traffic stop. *See* TEX. CONST. art. I, § 9, U.S. CONST.

amend IV and XIV, and TEX. CODE CRIM. PROC. ANN. art. 38.23. (*See* trial

court's denial of motion to suppress on the record at II R.R. 37:3.).

## STATEMENT OF PROCEDURAL HISTORY

Mr. Williams was arrested for DWI and possession of marijuana on February 26, 2012. Mr. Williams pleaded guilty to possession of marijuana on July 31, 2014, after the trial court denied his motion to suppress.

Appeal was made to the Waco Court of Appeals shortly thereafter. On July 30, 2015, the Waco Court issued a memorandum opinion affirming the trial court's decision. *Cristan Drayce Williams v. State*, No. 10-14-00307-CR, 2015 Tex. App. LEXIS 7928 (Tex. App.—Waco [10th Dist.] July 30, 2015, pet. filed) (mem. op., not designated for publication). (Appendix A-1)

Mr. Williams filed a Motion for Rehearing on August 13, 2015, which the Waco Court denied on August 20, 2015. (Appendix A-2)

## GROUNDS FOR REVIEW

1. The Waco Court of Appeals disregarded established case law from this Court, the United States Supreme Court, and other Texas courts by finding the stop lawful.

2. The Waco Court of Appeals applied an incorrect standard of review, and gave undue deference to the determinations of the trial court and officer.

## I. GROUNDS RESTATED:

The Waco Court failed to follow case law of this Court, the United States Supreme Court, and other Texas courts.

The only behavior offered to link Mr. Williams to crime was his driving around a parking garage floor three times. There was nothing else about his behavior. He did not drive unsafely or "irregularly", or exhibit "any bad driving." (II R.R. 10:24; 12:1.). His presence in the garage also was not unusual, and the officer "didn't think too much of it." (*Id.* at 20:5-6.).

The Waco Court of Appeals simply rubber-stamped the state's position in, essentially, two sentences, stating:

> [I]nnocent people would not be driving laps around one particular level in a nearly empty parking garage at 3 a.m. on a Sunday morning an hour after the bars had closed… Based on the testimony at the hearing, Williams exhibited unusual activity which was related to the crime of driving while intoxicated.

*Williams v. State,* No. 10-14-00307-CR, 2015 Tex. App. LEXIS 7928, at *4 (Tex. App.—Waco [10th Dist.] July 30, 2015) (mem. op.).

> However, the state had the burden of proof, and the law makes clear,
>
> an officer and the Government must do more than simply label a behavior as "suspicious" to make it so. The Government must also be able to either articulate why a particular behavior is suspicious or logically demonstrate, given the surrounding circumstances, that the behavior is likely to be indicative of some more sinister activity than may appear at first glance.

*Wade v. State*, 422 S.W.3d 661, 672 & n.47 (Tex. Crim. App. 2013).

As well, courts must *independently determine* if a "set of historical facts gives rise to reasonable suspicion." *Wade*, 422 S.W.3d at 669.

Thus, review should be granted because the Waco Court ignored established case law requiring courts to look at the particular behavior for linking suspects to crime, ignored objective facts underlying the officer's conclusion, and erroneously deferred to the trial court's determination.

## A. REASONS FOR GRANTING REVIEW:

The Waco Court of Appeals failed to address "every issue raised and necessary to final disposition of the appeal." TEX. R. APP. P. 47.1.

The Waco Court of Appeals' decision concerns and decides important questions of both state and federal law in a way that conflicts with decisions of the United States Supreme Court, this Court, and other Texas appellate courts. TEX. R. APP. P. 66.3 (a), (c).

The Waco Court of Appeals has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of the Court of Criminal Appeals' power of supervision. TEX. R. APP. P. 66.3 (f).

**B. FACTUAL BASIS.**

Mr. Williams was stopped by Sergeant Summers because he drove around the second floor of the Northgate parking garage three times. (II R.R. 20:12-20; 23:3-15; 25:10-12.). Northgate is the central entertainment district for College Station, Texas, and is responsible for the majority of DWI business transacted by the College Station police. (*Id.* at 16:23-25; 17:1-3.).

Mr. Williams was not driving dangerously, erratically, frantically, speedily or irregularly. (II R.R. 9:15-20; 10:7-10, 23-24; 11:1-4; 23:16-25.). He did not display "any bad driving." (*Id.* at 12:1.). He was not making furtive movements or suspicious gestures, shouting obscenities, or creating a threat or annoyance of any kind. (*Id.* at 10:11-13.). He was not standing around, passed out behind the wheel, or asleep on top of, next to, or below a vehicle. (*Id.* at 18:13-15.).

Mr. Williams was not in a place the law forbid him to be. (*Id.* at 10:1-6.). The garage was open to paying patrons who needed a place to park while visiting Northgate businesses on Saturday through Sunday morning. (*Id.* at 19:2-4; 17:6-7.). Mr. Williams was inside his truck within the garage near 3:00 a.m. on Sunday around an hour from when the bars officially closed at 2:00 a.m. (*Id.* at 17:18-25.). Although the garage had mostly

cleared out, Mr. Williams was not the only one using the garage, and patrons were still leaving past 2:00 a.m. (II R.R. 21:2-3; 18:3-12.).

In fact, Sergeant Summers checked the garage "later on, as people were leaving." (II R.R. 18:3-4, 11-12.).

Just before the stop, Sergeant Summers saw Mr. Williams parked in the garage, and "didn't think too much of it." (II R.R. 20:5-6.). Sergeant Summers only became suspicious moments later when he saw Mr. Williams make three trips around the second floor of the parking garage. (*Id.* at 20:12-17.). At that moment, Sergeant Summers concluded Mr. Williams was driving while intoxicated, and stopped him based on that conclusion. (*Id.* at 11:18-24, 11:25-12:5.). Sergeant Summers admitted more than once that his decision to stop was based on subjective conclusions. (*Id.* at 11:18-21, 11:25-12:1-2, 14:7-9, 10-11.).

## C. ARGUMENT.

**1.  The Waco Court ignored Fourth Amendment precedent requiring that behavior provide a sufficient link to criminal activity.**

Reasonable suspicion requires the presence of unusual activity, a connection from the unusual activity to the individual detained, and an indication that the unusual activity is reasonably linked to crime. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013).

"The relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." *Arguellez v. State*, 409 S.W.3d 657, 663 (Tex. Crim. App. 2013) (quoting *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (quoting *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997) (quoting *United States v. Sokolow*, 490 U.S. 1, 10 (1989)))).

"At a minimum, the suspicious conduct relied upon by law enforcement officers must be sufficiently distinguishable from that of innocent people under the same circumstance as to ***clearly, if not conclusively,*** set the suspect apart from them." *Thompson v. State*, 408 S.W.3d 614, 626 (Tex. App.—Austin 2013, no pet.) (emphasis added).

### a. *The Waco Court erred by finding Mr. Williams's driving behavior unusual, and failing to discuss how it was unusual.*

The Waco Court basically disposed of this case with one sentence: "[I]nnocent people would not be driving laps around one particular level in a nearly empty parking garage at 3 a.m. on a Sunday morning an hour after the bars had closed." *Williams*, 2015 Tex. App. LEXIS 7928, at *4.

However, this Court already said driving around for *several minutes* in a parking lot known for crime without any apparent purpose was not unusual, and provided "no reason for suspicion whatsoever." *White v. State*, 574 S.W.2d 546, 548 (Tex. Crim. App. 1978).

Moreover, contrary to the appellate court's representation, Mr. Williams's presence in the garage an hour after the bars closed at 2 a.m. was not unusual.

When Sergeant Summers first saw Mr. Williams parked in the garage just before the stop, he "didn't think too much of it." (II R.R. 20:5-6.). The garage was not closed, and Mr. Williams was not the only one there. (II R.R. 10:1-6; 18:5-16; 21:2-3.). Thus, being in the garage was not suspicious.

Next, Sergeant Summers did not go check the garage until "people were leaving." (II R.R. at 18:3-4, 11-12.). Thus, driving in the garage at the same time the officers were in the garage was not unusual because that was around the time "people were leaving." (*Id.*).

Further, once the bars closed, part of Sergeant Summers' regular duties was making sure people made their way to "their sober driver or something like that safely…" (II R.R. 18:3-9.). Thus, the Waco Court illogically assumed guilty, drunk people would be driving in the garage after the bars closed because, actually, designated, "sober" drivers were regularly present at that time. Indeed, Sergeant Summers admitted Mr. Williams could have been looking for occupants, friends, or a lady friend. (II R.R. 20:12-20; 23:3- 15; 25:10-12.). Therefore, driving around the Northgate parking garage at 3:00 a.m. was not unusual.

Although a memorandum opinion is intended to be brief,[1] the Waco Court's decision "exceeds what is permissible by failing to give any reason whatsoever for its conclusion…" [2] that innocent people would not be in Mr. Williams's situation—when it is clear any designated driver, person leaving a concert, or Northgate business employee on the way home would, in fact, be in the same situation.

---

[1] TEX. R. APP. P. 47.4.

[2] Citizens Nat'l Bank in Waxahachie v. Scott, 195 S.W.3d 94, 96 (Tex. 2006).

**b.** ***The Waco Court erred by finding, and failing to discuss how, Mr. Williams's driving behavior was reasonably linked to DWI.***

The Waco Court's statement (that innocent people would not be doing that) could have been said in virtually any case cited throughout this appeal.

For instance, in *Gamble v. State,* 8 S.W.3d 452, 453 (Tex. App.—Houston 1999, no pet.), it would have been real easy to say "innocent people would not be out at 3:00 a.m.; be unknown to police; be in a high crime area known for drugs and weapons, and responsible for roughly 70 police calls per year; be in front of a house with its own history of incidents; be repositioning themselves as officers drive by; and then walk away when officers approach." But, that's obviously not what the Houston Court said because it suppressed the stop.

In *State v. Jevari Edward Police*, 377 S.W.3d 33, 37, 39 (Tex. App.—Waco [10th Dist.] 2012, no pet.), the Waco Court could have easily said "innocent people would not be unknown to police, out at midnight, make an immediate turn after being tailed by police, turn onto a horseshoe shaped street with no exit that was located in an area known for its high crime rate, exit the area in less than 90 seconds, and drive in the opposite direction of police." But, the Waco Court did not say that because it affirmed suppression.

The stop was suppressed because there were no "traffic violations, irregularities, [or] dangerous, hazardous or reckless behavior…" *Id.* at 39.

The "behavior was not bizarre and nothing suggest[ed] a pattern or repetition of unusual behavior as was found in *Derichsweiler* [*v. State*, 348 S.W.3d 906, 917 (Tex. Crim. App. 2011), which] … presented a '*close call*.'" *Id.* at 39-40. "The noncriminal, not terribly unusual, nonrepetitive behavior observed in [Police] was insufficient to objectively support a belief that criminal activity was or soon would be afoot." *Id.* The defendant "simply made a legal turn in front of an officer into a neighborhood where criminal activity occurred previously." *Id.* at 40.

Even this Court, in *Foster v. State*, required more than awkward driving behavior to justify a stop at 1:30 a.m. a few blocks from Austin's Sixth Street bar district—even when supported by the detective's "prior training and experience in traffic patrol…" 326 S.W.3d 609, 610-11 (Tex. Crim. App. 2010). *Foster* importantly demonstrated that the particular behavior was indicative of crime—because it was "unsafe", "erratic", and "aggressive" driving behavior commonly associated with DWI. *Foster*, 326 S.W.3d at 611 n.3, 614. *See Navarette v. California*, 134 S.Ct. 1683, 1691 (2014) (stating, "accumulated experience of thousands of officers suggests these sorts of erratic behaviors are strongly correlated with drunk driving.").

Similarly, in *Davy v. State*, the Waco Court upheld the stop because the defendant entered a *closed* parking lot, performed five circles, exhibited

plausibly evasive behavior, weaved, drove slowly, and came dangerously close to the curb. 67 S.W.3d 382 (Tex. App.—Waco [10th Dist.] 2001, no pet.). As in *Foster*, the particular driving behavior directly and verifiably evidenced an element of DWI that correlated to the attendant circumstances.

Thus, weaving, lurching, and similar behavior that occurs on a late weekend night in a bar district will normally confirm reasonable suspicion of DWI because the behavior evidences an element of crime commonly associated with those attendant circumstances.

Yet, the same is not true with driving around a parking lot because that behavior actually indicates one's ability to control a vehicle by navigating through narrow lanes, making turns, keeping a safe and consistent speed, judging distances, and maintaining steady steering.

Thus, the court unreasonably assumed Mr. Williams's behavior was linked to crime just because he made legal, safe, and regular maneuvers in a general area where crime occurred previously. *Police*, 377 S.W.3d at 40.

**2.** **The Waco Court erred by conducting an improper review of the objective facts, which did not support the officer's conclusion that Mr. Williams's driving behavior was linked to DWI.**

The court of appeals incorrectly deferred to the trial court's decision, which merely deferred to the officer's legal conclusion, because courts must *independently determine* if a "set of historical facts gives rise to reasonable suspicion." *Wade*, 422 S.W.3d at 669.

**a.** *The Waco Court could not uphold the stop because the objective facts failed to support Sergeant Summers' conclusion that Mr. Williams's behavior was linked to crime.*

Sergeant Summers admitted several times that his decision to stop was based on subjective conclusions. (II R.R. 11:18-21, 11:25-12:1-2, 14:7-9, 10-11.). But, the trial court should not have accepted Sergeant Summers' subjective opinions because, objectively, Mr. Williams did not drive "irregularly" (*id.* at 10:24), or display "any bad driving." (*Id.* at 12:1.).

Additionally, Mr. Williams exhibited no lurching, weaving, inconsistent speed or acceleration, jerky maneuvers, or indication that he could not maintain control of his truck while he operated it. The record includes no evidence of Mr. Williams pausing and peering, making sudden starts and stops, or varying his speed in such a way as to indicate that he was confused about where he was or what he intended to do.

Therefore, driving safely, steadily, effectively, regularly, without suspicious or furtive gestures, without violating any traffic laws, and "without … any bad driving", could not provide Sergeant Summers' mere opinion with "objective factual support." *Ford v. State*, 158 S.W.3d 488, 494 (Tex. Crim. App. 2005). *See Wade*, 422 S.W.3d at 671 (stating, "What matters are the objective facts that indicate criminal activity, not the officer's characterization of them."); *Abney v. State*, 394 S.W.3d 542, 544-50 (Tex. Crim. App. 2013) (holding that "an officer's mistake about the legal significance of facts, even if made in good faith, cannot provide … reasonable suspicion." (citing *Robinson v. State*, 377 S.W.3d 712, 722 (Tex. Crim. App. 2012)); *Torres v. State*, 182 S.W.3d 899, 903 (Tex. Crim. App. 2005) (finding that reasonable suspicion must be established by facts, not conclusory statements); *Garcia v. State*, 43 S.W.3d 527, 531 (Tex. Crim. App. 2001) (refusing to defer to an officer's legal conclusion about reasonable suspicion—"we will not use [the officer's] 'legal conclusion' that a seat belt violation may have occurred to imply more than what his testimony reveals: that the child looked back several times."); *Viveros v. State*, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992) (refusing to defer to officers' opinions and beliefs that activity was related to crime).

### b. *Officer training and experience also could not supply a basis for upholding the stop.*

Courts must not defer to officer training and experience when they do not help interpret the specific facts in question. *Terry v. Ohio*, 392 U.S. 1, 27 (1968) (finding that due weight cannot be accorded to inferences drawn by an officer unless he is "entitled to draw [them] from facts in light of his experience."); *United States v. Cortez*, 449 U.S. 411, 418 (1981) (discussing the Fourth Amendment's "demand for specificity in the information upon which police action is predicated." (quoting *Terry*, 392 U.S. at 21, n.18)); *Ford*, 158 S.W.3d at 492, 493-94  (finding that, when officers rely on specialized training, they must specifically articulate objective facts supporting why they are entitled to that reliance.). *See also United States v. Martin*, 679 F. Supp. 2d 723, 734 (W.D. La. 2009) (stating courts may not "rubberstamp an officer's proffered rationale simply because he invokes his training and experience." (discussing *United States v. Jenson*, 462 F.3d 399, 404-05 (5th Cir. 2006)).

Despite abundant DWI training, Sergeant Summers never articulated how any training aided the conclusion that driving around a parking lot equated to drunk driving. (II R.R. 15:19-16:20.).

As well, of the hundreds of DWI arrests made by Sergeant Summers, not one was for "just driving around a parking lot." (II R.R. 22:2-3.).

Because Sergeant Summers had no experience with this particular type of behavior, he was not "entitled to draw [any inferences] from facts in light of his experience." *Terry*, 392 U.S. at 27. But, even if he was, Sergeant Summers never even attempted to relate how Mr. Williams's movement was similar to those of intoxicated drivers he observed in prior cases.

In other words, Sergeant Summers' conclusions were unacceptable because he did not correlate driving around a parking lot three times with any "modes or patterns of operation of certain kinds of lawbreakers." *Cortez*, 449 U.S. at 418; *see also White*, 574 S.W.2d at 547 (noting officer's failure to correlate behavior to any person fitting criminal description), and *Gamble*, 8 S.W.3d at 454 (discussing officer's failure to specify that defendant's movement "fit a specific criminal profile.").

Thus, Sergeant Summers' claims of training and experience did not support his opinion that driving around a parking lot three times was somehow associated with DWI.

## D. CONCLUSION.

The Waco Court of Appeals failed to discuss Mr. Williams's claims that the behavior was not suspicious, or indicative of crime; that the officer was not entitled to rely on experience or training; that the trial court impermissibly deferred to the officer's legal conclusions, opinions about

legal significance of facts, and interpretation of legal issues; and that the officer's opinion was not supported by objective factual support. Thus, the appeals court also failed to address "every issue raised and necessary to final disposition of the appeal." TEX. R. APP. P. 47.1.

## PRAYER

Mr. Williams prays this Honorable Court grant the petition, and order briefing to further consider reversing the decision of the Waco Court of Appeals, and either rendering a decision, or remanding for more thorough consideration.

Respectfully submitted,

Benton Ross Watson
120 E. 1st Street / Box 1000
Cameron, Texas 76520
Tel: 1 (254) 307-8181
Fax: 1 (254) 231-0212
ross@texastopdefense.com
State Bar No. 24077591
Attorney for Cristan Drayce Williams

## CERTIFICATE OF SERVICE

This is to certify that on October 21, 2015, a true and correct copy of the above and foregoing document was served on the Brazos County

Attorney's Office by electronic transmission to

rodanderson@brazoscounty and equisenberry@brazoscountytx.gov,

and by certified mail return receipt requested to 300 E. 26th Street,

Suite 1300, Bryan, Texas 77803.

                                                   Benton Ross Watson

# CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i) because this brief contains **2,963** words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. This brief complies with the typeface requirements and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been produced on a computer in conventional typeface using WordPerfect X6 in Times New Roman 14 point font in the body of the brief and Times New Roman 12 point font in the footnotes.

3. The electronic file is virus and malware free.

_____
(Signature of filing party)

Benton Ross Watson
_____
(Printed name)

Solo Practitioner
_____
(Firm)

October 21, 2015
_____
(Date)

## TABLE OF CONTENTS

I.    Waco Court of Appeals

Memorandum Opinion

App. A-1.

Order Denying Rehearing

App. A-2.

# APPENDIX A-1
## MEMORANDUM OPINION



# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00307-CR

**CRISTAN DRAYCE WILLIAMS,**

                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                        **Appellee**

### From the County Court at Law No. 2
### Brazos County, Texas
### Trial Court No. 12-02846-CRM-CCL2

## MEMORANDUM OPINION

Cristan Drayce Williams pled guilty to the offense of possession of marijuana, under two ounces. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(1) (West 2010). The trial court deferred a finding of guilt and placed Williams on community supervision for 18 months. Because the trial court did not err in denying Williams's motion to suppress, the trial court's judgment is affirmed.

Williams was parked with his vehicle's engine running on the second level in a parking garage of a well-known entertainment and bar district at 3 a.m. on a Sunday

morning.  The bars had closed an hour before.  The garage was nearly empty.  Sgt. Jason Summers of the College Station Police Department was on bicycle patrol of the garage and noticed Williams's parked vehicle.  Summers then rode up to the fourth level to check it to make sure it was clear and make sure there were no people passed out in their cars or on the pavement.  When he returned to the second level, Summers saw Williams in his vehicle make at least three laps around the second level.  Summers suspected that Williams may be intoxicated and was having trouble either reading the exit signs or finding the ramp to go down.  Summers decided to detain Williams and when he did, he arrested Williams for driving while intoxicated and possession of marijuana.[1]

Prior to Williams's plea, Williams complained in a motion to suppress that, among other things, he was detained without reasonable suspicion.  After a hearing, the trial court denied the motion to suppress.

When reviewing a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling.  *State v. Robinson*, 334 S.W.3d 776, 778 (Tex. Crim. App. 2011); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony.  *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007).  Therefore, we give almost total deference to the trial

---

[1] At the time of the suppression hearing, Williams was still on bond for the DWI arrest.

court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, such as the determination of reasonable suspicion, we review the trial court's ruling on those questions de novo. *Hereford v. State*, 339 S.W.3d 111, 118 (Tex. Crim. App. 2011); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).

In an investigatory stop, the totality of the circumstances — the whole picture — must be taken into account. *Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000). A detention based on reasonable suspicion must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). Otherwise stated, those specific, articulable facts must show unusual activity, some evidence that connects the detained individual to the unusual activity, and some indication that the unusual activity is related to crime. *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011). Circumstances that an officer relies on

"must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set the suspect apart from them." *Wade v. State*, 422 S.W.3d 661, 670 (Tex. Crim. App. 2013) (quoting *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991)).

Williams contends that because he was not violating the law or driving erratically, his actions were not "sufficiently distinguishable from that of innocent people." But innocent people would not be driving laps around one particular level in a nearly empty parking garage at 3 a.m. on a Sunday morning an hour after the bars had closed. Further, it is the totality of the circumstances that must be taken into account.

Based on the testimony at the hearing, Williams exhibited unusual activity which was related to the crime of driving while intoxicated. Accordingly, viewing the evidence in the light most favorable to the trial court's ruling and taking into account the totality of the circumstances, we find Sgt. Summers had reasonable suspicion to detain Williams. The trial court did not err in denying Williams's motion to suppress, and Williams's sole issue is overruled.

Having overruled Williams's sole issue, we affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed July 30, 2015
Do not publish
[CR25]



# APPENDIX A-2
## ORDER DENYING REHEARING



# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00307-CR

**CRISTAN DRAYCE WILLIAMS,**

       **Appellant**

**v.**

**THE STATE OF TEXAS,**

       **Appellee**

**From the County Court at Law No. 2
Brazos County, Texas
Trial Court No. 12-02846-CRM-CCL2**

## O R D E R

Cristan Drayce Williams's Motion for Rehearing is denied.

PER CURIAM

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
Motion denied
Order issued and filed August 20, 2015

