

# IN THE
# TENTH COURT OF APPEALS

## No. 10-16-00342-CR

**DAVID HARRELL,**

                                                                **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                **Appellee**


**From the County Court at Law**
**Navarro County, Texas**
**Trial Court No. C36184**


## MEMORANDUM  OPINION


Appellant David Harrell was indicted for the offense of possessing between four and two hundred grams of methamphetamine with the intent to deliver. A jury convicted Harrell of the lesser-included offense of possession of between four and two hundred grams of methamphetamine. The trial court assessed punishment at fifteen years' incarceration. Harrell challenges his conviction in three issues. We will affirm.

## *Background*

Harrell was arrested after methamphetamine was discovered in the vehicle he was driving. Officers began surveillance of Harrell after receiving a tip that the Jeep Harrell was driving was involved in narcotics distribution. The officers requested that a marked unit detain Harrell after the officers observed a dog kennel fly off the top of the Jeep while Harrell was driving on Interstate 45. Harrell consented to a search of the Jeep, and officers discovered approximately 5.85 grams of methamphetamine under the passenger seat.

## *Issues*

Harrell raises the following issues:

(1)     The evidence is insufficient to support his conviction because there was no evidence presented to affirmatively link Harrell to the methamphetamine discovered in the vehicle.

(2)     The trial court erred in denying Harrell's motion to suppress because the officer's detention of him was without reasonable suspicion or legal authority, in violation of the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution.

(3)     The trial court erred in admitting evidence from a narcotics officer that possession of retail gift cards is an indicator of narcotics trafficking because there was no clear and convincing evidence that the officer was an expert on the matter or that his testimony regarding such a connection was reliable by clear and convincing evidence.

*Discussion*

**1. Motion to Suppress**.  The basic facts are undisputed.  A dog kennel fell off the top of the Jeep Harrell was driving and landed at least partially in a lane of Interstate 45. Officers conducting surveillance of the Jeep requested that a marked vehicle stop Harrell for an "unsecured load."  Harrell specifically argues in his second issue that the officers had no legal authority to detain him because they did not observe a traffic violation. Harrell argues that the dog kennel falling off the top of the Jeep does not fit the definition of an unsecured load under the Transportation Code.  Harrell points to Section 725.003 which prohibits the transportation of a load of loose material without having it properly secured.  TEX. TRANSP. CODE ANN. § 725.003.  A "load" under the Code is defined as a "load of loose material."  *Id*. at § 725.001(1).  "Loose material" is defined as "material that can be blown or spilled from a vehicle because of movement or exposure to air, wind currents, or other weather.  The term includes dirt, sand, gravel, refuse, and wood chips but excludes an agricultural product in its natural state."  *Id*. at § 725.001(2).  The statute further defines "refuse" as "trash, rubbish, garbage, or any other discarded material."  *Id*. at § 725.001(4-a).

A trial court's ruling on a motion to suppress is reviewed on appeal for an abuse of discretion.  *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018) (footnoted citation omitted).

> We can sustain the trial court's decision if we conclude that the decision is correct under any applicable theory of law.  A trial court's ruling should be reversed only if it is arbitrary, unreasonable, or outside the zone of reasonable disagreement.

*Id.* (footnoted citations and internal quotation marks omitted). We use a bifurcated standard of review in evaluating the trial court's ruling. *Id.*; *see also Cole v. State*, 490 S.W.3d 918, 922 (Tex. Crim. App. 2016).

> First, we afford almost total deference to a trial judge's determination of historical facts. The judge is the sole trier of fact and judge of witnesses' credibility and the weight to be given their testimony. When findings of fact are not entered, we review the evidence in the light most favorable to the judge's ruling and assume the judge made implicit findings of fact that support the ruling as the record supports those findings. Second, we review a judge's application of the law to the facts *de novo.* We will sustain the judge's ruling if the record reasonably supports that ruling and is correct on any theory of law applicable to the case.

*Cole*, 490 S.W.3d at 922 (footnoted citations omitted); s*ee also Weems v. State*, 493 S.W.3d 574, 577 (Tex. Crim. App. 2016) (footnoted citations omitted). The trial court did not make express findings of fact in this case.

The Fourth Amendment does not forbid all searches and seizures, just unreasonable ones. *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997). A police officer is generally justified in briefly detaining an individual on less than probable cause for the purpose of investigating possible criminal behavior where the officer has a reasonable suspicion that criminal activity is occurring. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). A traffic stop is a seizure for Fourth Amendment purposes. *See Davis v. State*, 947 S.W.2d 240, 244-45 (Tex. Crim. App. 1997); *Young v. State*, 420 S.W.3d 139, 142 (Tex. App.—Texarkana 2012, no pet.). An officer may make a warrantless traffic stop if he has

a reasonable suspicion that a traffic violation has occurred. *See Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). "Reasonable suspicion" exists if the officer can point to specific, articulable facts that, when taken together with rational inferences from those facts, "would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). This standard is an objective one, disregarding the subjective intent of the officer and "looks instead to whether there was an objectively justifiable basis for the detention." *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013); *see also Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). An officer must, however, have more than "a mere inarticulate hunch, suspicion, or good faith suspicion that a crime was in progress." *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010) (quoting *Williams v. State*, 621 S.W.2d 609, 612 (Tex. Crim. App. 1981)). In deciding whether an officer had reasonable suspicion, we examine the facts that were available to the officer at the time of the detention, considering the totality of the circumstances. *Ford*, 158 S.W.3d at 492-93; *Davis*, 947 S.W.2d at 243.

Proof of the actual commission of a traffic violation is not a prerequisite to ascertaining the legality of a stop. *Leming v. State*, 493 S.W.3d 552, 561 (Tex. Crim. App. 2016) (citing *Drago v. State*, 553 S.W.2d 375, 377 (Tex. Crim. App. 1977)). Although generally a traffic violation must occur in an arresting officer's presence, an officer may

have reasonable suspicion to stop a vehicle if a traffic offense is committed in another officer's presence who forwards the information to the officer conducting the traffic stop. *See Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003) (officer observed defendant commit a traffic violation and radioed that information to other officers, giving those officers probable cause to stop defendant's vehicle). The fact that an officer made a stop for a reason other than the occurrence of a specific traffic violation is irrelevant as long as any traffic violation occurred that would have objectively justified the stop. *State v. Police*, 377 S.W.3d 33, 36 (Tex. App.—Waco 2012, no pet.); *Crittenden v. State*, 899 S.W.2d 668, 674 (Tex. Crim. App. 1995).

Assuming without deciding that Harrell did not commit the offense of losing an unsecured load, the dog crate falling off the top of the Jeep onto a lane of the interstate would give any officer a reasonable suspicion to believe that other possible traffic violations may have occurred, such as littering or illegal dumping (a violation of § 365.012(a) of the Health and Safety Code), obstructing a highway (a violation of § 42.03 of the Penal Code), or possibly transporting an animal in a cruel manner (a violation of § 42.092(b) of the Penal Code). TEX. HEALTH & SAFETY CODE ANN. § 365.012(a); TEX. PENAL CODE ANN. §§ 42.03 and 42.092(b). The trial court did not abuse its discretion in denying Harrell's motion to suppress because the officers had a reasonable suspicion from the facts that a traffic violation had occurred. We overrule Harrell's second issue.

**2. Sufficiency of the Evidence**. In his first issue, Harrell asserts that the evidence at trial was insufficient to support his conviction for possession of between four and two hundred grams of methamphetamine because there was no evidence presented that affirmatively linked him to the methamphetamine discovered in the Jeep.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

To establish possession of methamphetamine, the State must prove that Harrell exercised care, control, or management over the methamphetamine found in the Jeep and that Harrell knew the substance was methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38); *Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011). The evidence must show that Harrell's connection with the drug was more than just fortuitous, which is the "affirmative links" rule. *Blackman*, 350 S.W.3d at 594. In cases where a defendant does not have exclusive possession of the place where the controlled substance is discovered, additional facts beyond mere presence must link him to the illegal substance. *Tate v. State*, 500 S.W.3d 410, 413-14 (Tex. Crim. App. 2016). Factors to consider when determining whether the defendant had affirmative links to the narcotics include:

(1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed

other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); *see also Tate*, 500 S.W.3d at 414. "It is . . . not the number of links that is dispositive, but rather the logical force of all the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162.

The evidence at trial established that the Navarro County Sheriff's Office received a tip that a black Jeep Cherokee was involved in the distribution of narcotics. Detective Rickey Ragan and Lieutenant Clint Andrews, who were assigned to the narcotics and criminal investigation unit, discovered the Jeep at the Super 8 Motel in Corsicana. Ragan and Andrews began surveillance of the Jeep and watched it through binoculars for approximately one hour. During that time, the officers saw a man, later identified as Harrell, who appeared to be making repairs to the engine. The hood on the Jeep was up, and the officers observed Harrell entering and exiting all areas of the interior of the Jeep. Ragan testified that Harrell sat in both the driver's seat and the passenger's seat for several minutes. Another man, later identified as Jerry Williamson, arrived and assisted Harrell in getting the Jeep started. Williamson did not enter the Jeep other than to reach through the driver's window to turn the ignition. The officers observed no one else in or

around the Jeep. Once the Jeep was running, Harrell drove toward Interstate 45 with Williamson following in a separate vehicle. When Harrell accelerated onto the interstate, a dog kennel on top of the Jeep flew off and broke in two. One piece of the kennel landed in a traffic lane. Williamson stopped and retrieved the kennel.

Ragan and Andrews, who were following the Jeep in an unmarked vehicle, radioed dispatch and requested that a marked vehicle initiate a traffic stop of Harrell due to a loose load. Deputy Kristopher Matthews responded and pulled in behind Harrell who had already moved to the shoulder of the interstate preparing to stop. Ragan and Andrews stopped behind Matthews, and Williamson stopped behind the officers. Matthews requested that Harrell step out of the Jeep to talk as there was an aggressive dog inside. Harrell provided Matthews with false identification, and Matthews attempted to run the fake name and date of birth. Ragan and Andrews obtained consent from Harrell to search the Jeep. While Ragan searched the driver's side, Andrews searched the passenger's side. Andrews testified that he observed a baggie containing what was later determined to be between five and six grams of methamphetamine at the edge of the passenger seat between the seat and the door frame. Andrews noted that he did not see the methamphetamine when he first looked inside the passenger compartment, but it was readily visible when he stepped back and bent over. The methamphetamine was not readily visible or accessible from the driver's seat, but Andrews noted that the methamphetamine could have landed where it was found after

being tossed from the driver's seat. Harrell denied any knowledge of the methamphetamine. The officers also discovered a large number of gift cards in the Jeep. Andrews testified that in his training and experience, such gift cards were associated with the distribution of narcotics. Ragan and Andrews also saw that there was luggage and clothing in the back of the Jeep, and Harrell told them that he loaded all of that into the Jeep.

Ragan testified that Harrell told him that the Jeep belonged to Joe Johnson, a friend, and that Harrell had possession of the Jeep for three days. Harrell also told Ragan that he got the Jeep running in order to return it to the home of Johnson's parents.

Ragan testified that in his opinion as an expert in narcotics investigation that Harrell was in possession of the methamphetamine discovered in the Jeep. Ragan did not believe that the amount of methamphetamine was a distribution quantity. Ragan further noted that Harrell did not appear to be under the influence of narcotics and that Harrell was not in possession of any other narcotics or any type of narcotics paraphernalia. Ragan further testified that Harrell did not attempt to flee or make any furtive gestures and that Harrell had no large amounts of cash. However, Ragan also stated that Harrell gave them a false name.

The affirmative links that connect Harrell to the methamphetamine beyond the substance being found in the vehicle over which he had control were the following: (1) Harrell was the sole occupant of the Jeep; (2) Harrell was the only individual who was

inside the interior of the Jeep while the officers were conducting surveillance; (3) the methamphetamine was visible upon looking into the passenger compartment; (4) Harrell lied to the officers about his identity; and (5) there were a large number of gift cards in the Jeep which is equivalent to possession of a large sum of cash.

There was sufficient evidence, when viewed in the light most favorable to the verdict, from which the jury could have found that Harrell possessed between four and two hundred grams of methamphetamine. We overrule Harrell's first issue.

**3. Expert Testimony**. In his third issue, Harrell argues that the trial court erred in allowing Anderson to testify as an expert that possession of store gift cards is an indicator of narcotics distribution. Harrell contends that Andrews did not possess sufficient qualifications to be deemed an expert and his opinion was, therefore, not reliable.

Assuming without deciding that the trial court erred in permitting Andrews to give his opinion regarding the gift cards, Harrell has failed to establish that he was prejudiced by the ruling. *See* TEX. R. APP. P. 44.2(b) ("Any . . . error . . . that does not affect substantial rights must be disregarded."). Andrews's testimony was relevant to establishing a link between gift cards and narcotics distribution. As the jury found Harrell not guilty of possessing methamphetamine with intent to distribute, the testimony regarding the gift cards had little if any effect on the verdict.

Additionally, even if Andrews did not qualify as an expert under Rule 703, his opinion was still admissible as a lay opinion under Rule 701. An appellate court reviews a trial court's ruling on the admission of evidence under an abuse-of-discretion standard.

*Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Id.*; *Powell v. State*, 63 S.W.3d 435, 439-40 (Tex. Crim. App. 2001). If the trial court's ruling on the admission of evidence is correct under any theory of law, the trial court's decision should not be disturbed, even if the trial court gives the wrong reason for its ruling. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

Both lay and expert witnesses can offer opinion testimony. *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002); *see also Davis v. State*, 313 S.W.3d 317, 349 (Tex. App. 2010). A witness can testify in the form of an opinion under Rule 701 if the opinion or inferences (1) are rationally based on his perceptions and (2) are helpful to the clear understanding of the testimony or the determination of a fact in issue. *Osbourn*, 92 S.W.3d at 535. "Perceptions" refer to a witness's interpretation of information through his or her own senses or experiences at the time of the event (i.e., things the witness saw, heard, smelled, touched, felt, or tasted). *Davis*, 313 S.W.3d at 349. The witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations. *Id.* As a general rule, observations that do not require significant expertise to interpret and that are not based on a scientific theory can be admitted as lay opinions if the requirements of Texas Rule of Evidence 701 are met. *Id.* at 537. A witness may offer such an opinion even when he has experience or training. *Osbourn*, 92 S.W.3d at 535. Events not normally encountered by most people in everyday life do not necessarily require expert testimony. *Id.* The personal experience and knowledge of a lay witness may establish that he or she is capable, without qualification

as an expert, of expressing an opinion on a subject outside the realm of common knowledge. *Id.*

Andrews testified that he had nine years of experience as a narcotics detective. He did not have specific training regarding the use of gift cards in narcotics trafficking, but he was familiar with such behavior through his own experience and through sharing such information with other narcotics investigators. While Andrews was unable to specifically articulate all of the ways that gift cards could be used in the narcotics trade, he had sufficient experience to know that gift cards are frequently associated with the distribution of narcotics.

In this case, narcotics trafficking is outside the realm of common knowledge of most jurors, and a police officer who has received narcotics training and has been involved in numerous drug investigations in the course of his career, may testify that certain behavior is consistent with the distribution of narcotics. *See Atkinson v. State*, 564 S.W.3d 907, 913 (Tex. App.—Texarkana 2018, no pet.) (narcotics officer permitted to give his opinion as to whether defendant was distributing drugs); *see also Crawford v. State*, No. 07-11-0184-CR, 2013 WL 150283, at *3-4 (Tex. App.—Amarillo Jan. 14, 2013, pet. ref'd) (mem. op., not designated for publication) (officer permitted to give opinion that quantity of drugs constituted a distribution quantity). The trial court did not abuse its discretion in permitting Andrews to offer his opinion that gift cards were often associated with the distribution of narcotics. We overrule Harrell's third issue.

### *Conclusion*

Having overruled all of Harrell's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,*
     Justice Davis, and
     Justice Neill
     *(Chief Justice Gray concurs in the Court's judgment affirming the trial court's judgment.  A separate opinion will not issue.)
Affirmed
Opinion delivered and filed June 5, 2019
Do not publish
[CR25]

